## STATE v DeWINE

Ohio Appeals, 2nd Dist, Greene Co.

Nos. 460 & 461. Decided April 23, 1940.

Miller & Finney, Xenia, for plaintiff-appellant.

Hon. L. T. Marshall, Xenia, for defendants-appellees.

### OPINION

BY THE COURT:

Each defendant in the Mayor's Court of the Village of Yellow Springs, Greene County, Ohio, was charged with, tried, convicted and sentenced for the offense of unlawfully disturbing the peace, good order and quiet of said village on the 22nd of July, 1939.

The offenses set out in the affidavits were characterized as "unusual, unnecessary, disorderly conduct, wrangling and quarreling". Each defendant prosecuted an appeal on questions of law to the Common Pleas Court of Greene County where the judgments of conviction were reversed because not sustained by the evidence.

There are separate bills of exceptions but by agreement the testimony in each case was made applicable to both cases.

From the record it appears that defendant, Tommy DeWine, and his brother, Ray DeWine, worked in what is known as the Savoy Cafe. Frank DeWine operated the Glen Cafe situated on the east side of Xenia Avenue. The Savoy Cafe is about 50 yeards north

from the Glen Cafe on the same side of the street as the Glen Cafe, namely, the east side. The Tavern Restaurant is across the street from the Savoy Cafe.

The alleged offenses were committed on Saturday after midnight. Frank DeWine was in his place of business and a customer by the name of Charles Peterson was in the cafe and according to DeWine was drinking intoxicating liquor from a bottle and conducting himself in a disorderly manner. DeWine called the village marshall and Peterson was ejected. Peterson and other bystanders remained for some time in front of the Glen Cafe, milling around and in probability expressing unfavorable opinions of the DeWines.

Tommy DeWine and his brother Ray, a little later came over to the Glen Cafe from the Savoy Cafe and had a luncheon. Tommy had some words with the group in front of the Glen Cafe when he went in. According to plaintiff's witnesses, Tommy DeWine came out from the Glen Cafe and challenged members of the group and observed that his little brother could take on any four of the number in front of the place. He and Ray, after finishing their meal, moved on down Xenia Avenue toward the Savoy Cafe, Tommy loudly cursing and swearing. Some individual from across the street cursed Tommy DeWine and he responded in kind. Soon thereafter, one John Bittner, who accompanied a lady, undertook to quiet Tommy DeWine and when DeWine menaced him, struck DeWine. Frank DeWine from the doorway of the Glen Cafe observed the fight, went into the restaurant, secured either a black jack or a piece of black rubber hose, came out and began to wield it on certain individuals in the group where the fight was in progress. Bittner says that it was a black jack with which he was struck and that it broke his arm. The matter ended in a free-for-all. The altercation and the fight began in about the middle of the street in front of the Savoy Cafe and the Tavern.

There is disparity in the testimony of the witnesses for the respective parties. The Common Pleas Judge reviewing the testimony, came to the conclusion that the defendants were only protecting their own places of business, were not the aggressors and apparently applied the defense of self-defense.

It must be kept in mind, however, that the test which a reviewing court applies to the evidence in an appeal on questions of law is essentially different from that which is employed by the trial court in determining the guilt or innocence of men charged with a criminal offense.

In this case the right to weigh the evidence, determine the credibility of the witnesses and the probability of the statements of all who testified, was reposed in the trial judge, namely, the Mayor. The obligation of the reviewing court as applied to the evidence was to determine only whether or not there was any substantial evidence to support the judgment by the requisite degree of proof or whether the judgment was so manifestly against the weight of the evidence as to require its reversal. As early as **Breese v State, 12 Oh St 146**, the Supreme Court announced the rule that a "criminal judgment will not be reversed because contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony". This holding has been followed throughout the years and as late as **Scaccuto v State, 118 Oh St 404.**

Our obligation is the same as that of the first reviewing court, namely, to view this record and to say whether or not, granting to the trial magistrate his prerogatives, his judgment was supported by or was manifestly against the weight of the evidence.

Upon this test we cannot determine that the Mayor erred. The case in our judgment does not present a close question in view of the character of the charge against the defendants. Neith-

er was charged with assault and battery. The law of self-defense was, therefore, not in this case. They could have been found guilty of disturbing the peace although they might not have been found chargeable with assault and battery.

Upon their own testimony they were both guilty of disturbing the peace. It is not necessary to refer specifically to the record but it clearly appears that Tommy DeWine was making the night hideous with his swearing and cursing and berating those who had offended him and Frank DeWine afterward came into the quarrel and fight at full speed wielding either a black jack or a black hose. The magistrate was fully within his rights had he concluded that it was a black jack. In any event it was a weapon powerful enough when wielded by Frank DeWine to break another's arm.

Tommy DeWine had committed the offense with which he was charged before any blows were struck and therefore what happened at the time of and after the actual fight began could not relieve him of guilt of the offense with which he is charged if it be conceded that he was not at fault in engaging in the fight. The great latitude delegated to municipalities respecting the enactment of legislation against disturbances of the peace is evident upon a reading of the authorizing section, namely §3664 GC,

"To provide for the punishment of persons disturbing the good order and quiet of the corporation by clamors and noise in the night season, by intoxication, drunkenness, fighting. committing assault, assault and battery, using obscene or profane language in the streets or other public places to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior. * * *."

An ordinance has been approved which provided that loud or lascivious behavior in streets, alleys and other public places would constitute a breach of the public peace. **Billington v Hoverman, 18 O. C. C. 637.**

It is necessary to read this record carefully to learn the chronology of events and to fix the places at which the various events occurred on the night in question. When this is done it is convincing that Tommy DeWine did not remain on his own premises nor immediately about them but rushed out in front of his brother's place of business and began cursing and swearing and then proceeded on down the street to the south and was soon again violating the peace by his loud use of profane language. He then got into the fight, which seemed to be inevitable, and which, no doubt, would not have occurred had he remained in his brother's place of business.

It should be noted also that he did not own nor was he the manager of the Savoy. Nor does it appear that anyone was menacing this place of business nor that there was any necessity of protecting it in any manner whatever. It could be fairly said from the record that Tommy DeWine did not strike the first blow and it is probable that Bittner struck him first but Bittner insists that DeWine was menacing him as well as using profane language. It fairly appears that Tommy DeWine was of the opinion that he was justified in entering into physical combat because someone cursed him or called him by an obscene name. This is not the law. It has been held times without number that no language, however vile or profane, justies physical attack.

Be this as it may, at this moment Frank DeWine was in a place of safety at his own business establishment. He then chose to rush out and to move 150 feet away and precipitate himself into the fight. In this situation he could not in any view of the facts nor the law assert that he was not the aggressor and there is no extenuating circumstance in his behalf save only the fact that he wanted to rush to the assistance of his brother who then was in combat. This possibly was but a

natural reaction of one brother toward another but it is not an excuse nor justification in law for an assault.

We do not undertake to say that the DeWines were altogether to blame. It may be that the crowd about the Glen Cafe should have been dispersed and that its members were disorderly and maintained a hostile attitude toward the DeWines but this in itself did not justify their disturbing the peace by cursing, swearing and fighting or by attacking any member of the group of men on the street.

It should be observed that the marshall of the town testified to a state of facts which indicate that the DeWines were the aggressors. Two witnesses were in the employ of Frank DeWine on the night that the alleged offense occurred and both say DeWine had a black-jack. One says that he had it under his apron and the other that he was seen to place it in his pocket and later fasten it to his wrist by means of a strap. This was not employed in the place of business of any of the DeWines but out in the street of the Village of Yellow Springs.

As before stated the trial judge could have found these defendants guilty of the offense of which they were charged upon their own testimony. Upon the statements of the witnesses for the plaintiff he could have done nothing else.

The record discloses that other men who may also have been chargeable with the breach of the peace were not arrested at the time that the DeWines were apprehended. This fact was proper to consider as it related to the question whether or not there was any improper and prejudicial feeling on the part of the marshall or the mayor against the DeWines. It did not, however, in any sense amount to a defense of the DeWines and the sole test for the magistrate was whether or not they or either of them was guilty of the offense with which he was charged. The offense in this case, although of a minor nature, consists in the violation of the peace and quiet of a Municipal Corporation. The proper enforcement of such ordinances tends to maintain that orderly state of society which is essential to the protection and well being of the citizens of a community. The affair out of which these prosecutions grew may easily have resulted in a killing.

We hold no brief for the men who were creating a disturbance in front of Frank DeWine's place of business, if it occurred, and it is the obligation of those who enforce the law to protect him in the operation of his business. Defendants may not, however, take the law into their own hands and breach the public peace without paying the penalty therefor.

The magistrate acted well within his rights in finding each of the defendants guilty of the offense with which he was charged.

The judgment of the Common Pleas Court will be reversed and cause remanded.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.