**STATE, Plaintiff-Appellee, v. LASWELL et, Defendants-Appellants.**

Ohio Appeals, Second District, Preble County.

No. 117.    Decided April 9, 1946.

Julian E. Clark, Prosecuting Attorney, John M. Kiracofe, Assistant Prosecuting Attorney, Eaton, for Plaintiff-Appellee. King & Young, Eaton, for Defendants-Appellants.

## OPINION

By WISEMAN, J.

This is an appeal on law from the Common Pleas Court of Preble County, Ohio. The defendants, Arlie Laswell and Tillman Laswell, brothers, were jointly indicted for second degree murder for the killing of Eddie Settles on September 3, 1945, at the Buckeye Gardens in Preble County, Ohio, tried and found guilty of the offense charged.

For their first assignment of error, the defendants contend that the trial court committed error in charging the jury as to the penalty for second degree murder, assault and battery, and assault, and in failing to include in the charge a statement "that in determining the question of guilt, it must not consider the punishment, but that punishment rests with the Judge as may be provided by law," as provided by §13442-9 GC. It is contended that the failure of the court to charge relative to the punishment for manslaughter confused the jury which caused them during the deliberations to make an inquiry of the court as to the penalty for manslaughter. In answer to this inquiry the court informed the jury as follows:

"The court cannot give you any instructions on the information requested in your note. You will retire to the jury room for further consideration."

It is contended that the failure of the court to inform the jury as to the penalty for manslaughter led the jury to believe that manslaughter was not involved in the case. We do not believe that the fact that the court did not inform the jury as to the penalty for manslaughter led the jury to believe that manslaughter was not one of the lesser crimes for which the defendant may be found guilty, inasmuch as the court charged the jury as to the elements of manslaughter and explained to the jury the form of verdict for manslaughter. The failure of the court to charge the jury that they must not consider the punishment did not work to the prejudice of the defendants but rather to the State. In the case of **State v Moon, 124 Oh St 465,** it was held:

"The omission of an instruction, that the jury must not consider the punishment, may be prejudicial to the rights of the State, but is not to the detriment or disadvantage of a defendant charged with an offense to which such provision applies, and he is therefore not prejudiced thereby or prevented from having a fair trial."

It was held in that case that a judgment of conviction would not be reversed unless it would affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial as provided in §13449-5 GC. See **State v Huffman, 131 Oh St 27; Makley v**

State, 49 Oh Ap 359; State v Hobbs, 59 Oh Ap 274, affirmed by Supreme Court in 134 Oh St 56. In the case at bar the court is of the opinion that the defendants were given a fair trial and that the failure of the court so to charge did not constitute reversible error.

For their second assignment of error, the defendants contend that the charge of the court on manslaughter was wholly inadequate and failed to divide the subject into its two natural divisions of voluntary and involuntary manslaughter. Counsel cites the case of **State v Carter, 75 Oh Ap 545** (reported in the Ohio Law Reporter October 1, 1945), in which it was held:

"It is prejudicial error for a court, in its charge to the jury as to manslaughter, in a case involving an indictment for murder in the second degree, to neglect to divide such subject into its two natural divisions, voluntary and involuntary manslaughter, and to fail to give a correct statement of the necessary elements which must be shown beyond a reasonable doubt to make a case, when so required by the evidence."

An examination of that case discloses that the court failed to define manslaughter in general or voluntary and involuntary manslaughter. In the case at bar, the court did charge the jury with respect to manslaughter and, while we think the court should have elaborated on the definition, nevertheless, we are of the opinion that the judge clearly gave the elements of voluntary and involuntary manslaughter, wherein he charged the jury as follows:

"Should you find the defendants, or one of them, not guilty of murder in the second degree, then you will inquire whether the killing of Eddie Settles by these defendants, or one of them, if you find that they, or one of them, did kill him, was done unlawfully without malice, either upon a sudden quarrel, or unintentionally while the defendant was engaged in the commission of an unlawful act."

This charge concisely states the essential elements of voluntary and involuntary manslaughter. Voluntary man-

slaughter is the unlawful and intentional killing of another while the one who commits the crime is under the influence of a sudden passion or heat of blood produced by an adequate and reasonable provocation before a reasonable time has elapsed for the blood to cool and reason to assume its habitual control. Involuntary manslaughter is the unlawful and unintentional killing of a human being, while the slayer is in the commission of an unlawful act. See State v. Carter, supra; **Johnson v State, 66 Oh St 59.**

We do not believe that the defendants were prejudiced by the charge as given.

For their third assignment of error, the defendants contend that the court erred in its charge to the jury in not fully charging on the matter of self-defense. The court instructed the jury relative to the issue of self-defense and there is nothing in the charge prejudicial to the rights of the defendants. The court did not go very much into detail with respect to the elements of proof which would sustain a plea of self-defense, however, the charge as given was correct, and if counsel believed at the time that the court did not fully instruct the jury in regard to self-defense, it was the duty of counsel to call the court's attention to the omission. At the end of the charge, the court made the following inquiry of counsel;

"Is there anything further from counsel for either side at this time?"

Counsel did not request the court to give additional instruction. Counsel only reserved a general exception to the charge. It has been held that a general exception to the charge is effectual only as to errors of law existing in the charge as given and does not bring in review an omission or failure to give further proper instructions. Furthermore, it is the duty of counsel to call the court's attention to any omission and make a request for further instructions. **Columbus Railway Co. v Ritter, 67 Oh St 53; State v McCoy, 88 Oh St 447; Rucker v State, 119 Oh St 189; Vol 2, O. Jur. page 909.**

For their fourth assignment of error, the defendants contend that the court committed error in charging the jury on the principles of aiding and abetting, whereas the evidence in the cause furnishes no foundation for such charge. **Sec 12380 GC** provides:

414

·"Whoever aids, abets or procures another to commit an offense may be prosecuted and punished as if he were the principal offender."

After reading the record in this case, the court is of the opinion that the court very properly charged the jury on this question. This assignment of error applies particularly to Tillman Laswell, who did not strike the fatal blow. However, there was evidence introduced by the State from which the jury could reasonably conclude that Tillman Laswell aided and abetted his brother and acted in concert with him in the commission of the crime. The jury evidently believed the testimony given by the witnesses called by the State which strongly supported the contention of the State that Tillman Laswell did commit an overt act by striking the decedent over the head with a beer bottle during the scuffle at which time the decedent was stabbed in the neck and other places in the body which caused his death. It is not incumbent upon the State to prove a prior conspiracy between the two defendants to commit the crime. It is sufficient for the State to prove that at the time the crime was committed the two defendants acted in concert in accomplishing their felonious act, or that Tillman Laswell committed an overt act with a view to accomplishing their purpose as held in the case of Goins v State, 46 Oh St 457, and Woolweaver v State, 50 Oh St 277.

For their fifth and sixth assignments of error, the defendants contend that they were not accorded a fair and impartial trial and that the verdict of the jury was not sustained by sufficient evidence and was contrary to law. The defendants contend that they were not given a fair and impartial trial due to the alleged errors complained of in their first four assignments of error, which have already been determined. On the question of the weight of the evidence it was the peculiar province of the jury to disbelieve the testimony of the defendants and believe the testimony of the witnesses presented by the State. A judgment of guilty will not be reversed as not sustained by sufficient evidence unless the verdict and judgment are clearly and manifestly contrary to the weight of the evidence. Breese v State, 12 Oh St 146; Scaccuto v State, 118 Oh St 397; State v DeWinne, 31 Abs 693 (By Court of Appeals of Greene county); 2 O. Jur. 752, Sec. 663.

Was the verdict of the jury against the manifest weight of the evidence? There was evidence introduced on behalf

of the State which strongly supports the claim of the State that approximately ten weeks prior to September 3, 1945, Arlie Laswell was involved in trouble at the Buckeye Gardens; that the next morning his brother, Tillman Laswell, went to the Buckeye Gardens to inquire about the purse of Arlie's wife, which had been lost when the trouble occurred on the night before; that on September 3, 1945, the two defendants and several other persons went squirrel hunting some distance south of Richmond, Indiana; that in the evening the two defendants and a third person by the name of Brock came to the Buckeye Gardens by automobile; that after the two defendants entered the place of business and ordered some beer, Kinney, the proprietor, asked them to leave; that the Laswells had done some drinking that day; that the conversation of Arlie Laswell with Kinney showed hostility; that the proprietor asked Brock to cooperate with him in getting them to leave the premises; that when Eddie Settles and Junior Fleenor, both employees of the Buckeye Gardens, came on duty and were engaged in waiting on customers, Arile addressed these two employees in vile and provocative language in a manner which indicated hostility; that an argument ensued between Eddie Settles and Arlie Laswell and blows were struck; that Tillman Laswell approached the deceased from his rear and hit him over the head with a beer bottle; that there is evidence to indicate that Settles had Arlie Laswell on the floor and was on top of him holding him down when Tillman Laswell struck Settles over the head with the beer bottle; that about that time it was observed that Arlie Laswell had a knife and as Settles was struck over the head with the bottle he, as the witness put it, "gave away," and at that moment Arlie cut him in the neck; that as Settles got up and walked away Arlie followed him across the floor and stabbed him in the back; that a free-for-all fight then took place between the two Laswells and Kinney, Fleenor and two Baker boys, who were customers at the time; that the Laswell boys were driven into a small enclosure near the door, through which they attempted to escape; that their escape was prevented by the door being locked; that they asked permission to leave and one witness testified that "Tillman would say, we'll leave, but we'll be back"; that after the affray had gone on for a period estimated to be some twenty or thirty minutes, the proprietor permitted them to cross the floor and to leave through another door; that thereupon several persons assisted Settles to an automobile which was parked in the parking

space, intending to take him to the hospital; that while he was being placed in the automobile, Tillman Laswell was observed standing near the Laswell automobile loading a shotgun; that Arlie said, "Get that soldier and sailor"; that Tillman fired, according to his own testimony, three, four or five times; that he fired several shots toward the building, knocking the glass out of the doorway, and also fired at least once and perhaps twice, striking the automobile in which Settles was placed; that Settles was taken to the hospital and was pronounced dead upon arriving at the hospital; that examination showed that he died as a result of the stab in the neck which severed the jugular vein; that the defendants secreted themselves until the next day when they fled to California; that a few weeks thereafter they returned and surrendered to the sheriff.

We are of the opinion that from the evidence in this case the jury was justified in finding both defendants guilty of murder in the second degree. We do not believe that the verdict of the jury was against the manifest weight of the evidence, neither was the verdict of the jury or the judgment of the court contrary to law.

We find that this case was fairly tried, ably presented, and that substantial justice was done. We find no errors in the record prejudicial to the rights of the defendants. The trial judge was fair in his ruling on the admission and exclusion of evidence and committed no prejudicial error in giving instructions to the jury.

The judgment of the trial court will be affirmed.

HORNBECK, PJ, and MILLER, J, concur.