THE STATE OF OHIO, APPELLEE, *v.* TAYLOR, APPELLANT.*

---

*Motion for leave to appeal overruled, December 18, 1957. Rehearing denied January 15, 1958.

(No. 5510—Decided August 21, 1957.)

*Mr. Samuel L. Devine,* prosecuting attorney, and *Mr. Albert G. Giles,* for appellee.

*Messrs. Herbert, Tuttle, Applegate & Britt* and *Mr. Gordon K. Bolon,* for appellant.

BRYANT, J. Leslie M. Taylor was indicted for murder in the second degree by the Franklin County Grand Jury at the September 1955 term. The indictment, in addition to other allegations, charged that on or about September 13, 1955, within

said county, Taylor "did purposely and maliciously kill Lewis M. Lupo." Taylor entered a plea of not guilty and the case was tried to a jury. Taylor was found not guilty of murder in the second degree, but guilty of manslaughter. A motion for a new trial was filed and overruled by the trial court, after which Taylor was sentenced to the Ohio Penitentiary.

A notice of appeal was filed, and counsel for Taylor make three assignments of error which they urge upon this court as prejudicial and proper grounds for reversing the verdict, judgment and sentence of the trial court. Two of the errors claimed on behalf of Taylor relate to the charge given by the trial court at the conclusion of the case. The third error assigned is that the verdict is not supported by evidence establishing guilt beyond a reasonable doubt.

The major events involved in the fatal shooting took place on Cleveland Avenue in Columbus in what is known as the Milo section. Three establishments retailing beer and intoxicants, all on the east side of Cleveland Avenue and within a short distance of each other, witnessed some part of the events. One of the establishments, the F. & H. Grill, 926 Cleveland Avenue, was owned by the defendant's mother and was managed by the defendant. The other two were Boal's Confectionery, 914 Cleveland Avenue, corner of Starr Avenue, and the Summit Grill, 876 Cleveland Avenue, corner of Second Avenue.

It appears from the evidence that on the night of September 13, 1955, a group of young men ranging in age from 18 years to 24 years, who resided in the area and had been acquainted for some time in the past, gathered at Boal's Confectionery where, starting at 8 p. m., and continuing from two to two and one-half hours, they drank beer and played games. They numbered from seven to nine.

It appears further that Boal's Confectionery closed at about 10:30 p. m., at which time the group moved to the Summit Grill, where the drinking of beer was continued and there was more playing of games or amusement devices. Soon after 10:30 p. m., a woman described as being very drunk entered the Summit Grill, crying loudly and seeking unsuccessfully to purchase a bottle of beer. She was refused a drink.

The inebriated woman, frustrated in her efforts to get more

to drink, waved a dollar bill in the air and offered to pay anyone who would take her home. The proprietor had had previous trouble with the lady and ordered her out of his place, whereupon one of the young men, Martin Offenberger, age 20 years, offered to escort her to Fifth Avenue and Cleveland Avenue where the lady said she could board a bus headed for her home.

Offenberger and the lady started north on Cleveland Avenue, headed for the bus stop at Fifth Avenue. As they passed the F. & H. Grill, the lady changed her mind and demanded that Offenberger take her in for another drink. A quarrel developed, and, if some of the witnesses were accurate, the screams and cries of the drunken woman were loud and could be heard for a considerable distance.

Taylor was inside the F. & H. Grill and upon hearing the commotion went to the front entranceway, described by some as a small porch, where he demanded to know what Offenberger was trying to do to the lady. Offenberger testified that Taylor swore at him and that one of two men who came out with Taylor prepared to do battle with him.

Offenberger said he was outnumbered and beat a retreat, apparently making it plain he would return, and the drunken lady, on hands and knees, crawled into the F. & H. Grill and seated herself on a barstool, making a considerable commotion inside and later going into the women's rest room. Offenberger meanwhile went down the street to the Summit Grill, let it be known that he had been abused and asked for help and in a very short time was on his way back accompanied by all his companions of the early evening hours.

Inside the F. & H. Grill, a patron informed Taylor that the group of young men was nearing the place, whereupon Taylor went to a drawer where he kept a pistol in a cigar box and, armed with the pistol, went out to meet Offenberger and the others. There is a sharp conflict in the testimony as to just what did take place, but it is clear that Taylor fired one warning shot into the ground and then fired a second shot which struck Lewis M. Lupo, Jr., a corporal in the Marine Corps home on leave, in or near the chest, traveled a downward course and perforated the stomach and the pancreas. Lupo died of massive hemorrhage some four hours later in the hospital to which the police ambulance had taken him.

Sharpest conflict in the testimony relates to circumstances under which the second shot—the one which killed Lupo—was fired. It is not disputed by Taylor that a bullet from a weapon which was discharged while in Taylor's hand fatally wounded Lupo. Taylor, with partial backing from another witness, contends that the fatal discharge of the gun took place simultaneously with and as a direct result of a kick by the brother of the dead marine, the kick landing in Taylor's testicles and causing him to bend almost double.

Most of the other witnesses in a position to observe testified that Taylor fired the second shot in response to a plea from Lewis Lupo to put the gun away and talk the matter over, and that it was from 55 seconds to a minute after the firing of the fatal shot and not until Marion W. "Billy" Lupo saw his brother, Lewis, collapse that "Billy" Lupo kicked Taylor and further that Taylor struck "Billy" a blow on the head with considerable force and invited any of the others to come forward and receive more of the same treatment.

As stated before, the matter was tried to a jury which was taken to view the premises, after the opening statements. Defendant moved for a directed verdict at the close of the state's case and renewed the motion at the close of all the evidence, both of which motions were overruled by the trial court.

Defendant asked for eight special instructions before argument, four of which were given by the trial court before argument and the others were refused. After argument, the court delivered its general charge, at the conclusion of which the court inquired of counsel whether there was anything further to request and, except for a brief reference to the exhibits, no further request was made by either side except a reservation of "general exceptions to the charge" made by counsel for defendant, according to the record, and this was done after the jury had retired.

For his first assignment of error, defendant says that the trial court erred in that it mistakenly charged the jury "on the 'reasonable man' theory as applied to the law of self defense." In support of this contention, defendant makes specific objection to the following language in the charge of the court:

"A man might be mistaken as to his belief but if there were

reasonable grounds for a reasonable person to believe that there was great danger, then the person so feeling had a right to act accordingly * * *."

It is of course well settled that a charge must be considered as a whole to determine whether a portion thereof is prejudicially erroneous. The rule is stated in 4 Ohio Jurisprudence (2d), 269, Appellate Review, Section 993, as follows:

"In determining the question of prejudicial error in the instructions of the trial court to the jury the charge must be taken as a whole and the portion which is claimed to be erroneous must be considered in its relation to, and as affected by, the other parts of it. * * *

"* * *

"Consequently, if the charge considered as a whole appears to be fair and proper and to state the law of the case correctly and in a way reasonably calculated to enable the jury to understand the rules of law which they are to apply to the evidence before them, the judgment will not be reversed because the language of some part of the charge may, if taken alone, be objectionable or subject to criticism, or because some clause, sentence, or paragraph standing by itself is erroneous, inaccurate, obscure, ambiguous, or misleading or confusing. Nor will the judgment be reversed, provided the parts excepted to are not in themselves calculated to mislead, because particular paragraphs fail to embrace every condition to a recovery or a defense, or fail to amount to a complete exposition of the law upon the subject with which it deals."

The question then is whether taking the general charge and the special instructions together the language objected to, considered in its proper setting, was prejudicially erroneous and resulted in misleading and confusing the jury to the prejudice of Taylor.

In the first place, it is the law and it was recognized as such by the defendant in his first special instruction that the bona fide belief of the defendant is only part of the test and that in addition the defendant must have reasonable grounds for such belief. (*State* v. *Champion*, 109 Ohio St., 281, 142 N. E., 141.)

Defendant's Special Instruction No. 1 is as follows:

"No. 1. 'The court instructs you, members of the jury, that

if you find from all the evidence that the defendant had reasonable grounds to apprehend and to believe and did believe that the patrons in his place of business or that he personally was in danger of death, or grave bodily harm, that property in his place of business would be damaged or destroyed, then the court instructs you that the defendant had a lawful and legal right to defend himself, his patrons and his property even to the extent of taking life, if necessary.' ''

Even if this were not so, it is to be doubted that defendant could urge any different position after having requested the court to deliver this charge, and after the court had complied with the request. To get the setting in which we find the language objected to, we refer to the record and set forth here are several sentences immediately prior to the words objected to and some of that which follows:

''There is some evidence here, at least prior to the actual killing that there was some reason for Mr. Taylor to be acting in self defense. A person has the right to protect himself or his property and if he honestly believes that he is in danger of his life, of great bodily harm, or that his property is in danger or that his patrons, a man engaged in this business that there is danger of great bodily harm to his business or his property or his patrons, he is to use such force as is necessary to protect himself or his property or his patrons even to the extent of taking a life but there must be reasonable grounds for that belief and he must actually believe it. Whether there were reasonable grounds in this case for such a belief it is for the jury to determine from all the facts and circumstances. A man might be mistaken as to his belief but if there were reasonable grounds for a reasonable person to believe that there was great danger, then the person so feeling had a right to act accordingly so long as he did not act in such a way as to use force which was entirely out of proportion to the apparent and believed danger, and if Mr. Taylor in this case had reasonable grounds were the circumstances such as to lead him to believe that there was grave danger to himself or to his patrons or to his property, he had a right to take some steps to protect that and he wasn't required to retreat or to lock up his doors so that people could not come in to attack him or his patrons or his property, but he had a right to stand his ground and if in so doing he only used that

force which was necessary in his mind to repel the danger that he believed and had reasonable grounds to believe, then he acted within his rights.''

In the second sentence of the above-quoted matter, we find the court telling the jury that the defendant has certain rights and may take certain action in defense thereof ''if *he* honestly believes, * * *'' and further, referring to the defendant that ''*he* must actually believe it.'' (Emphasis added.) It will be noted that both the foregoing were stated very shortly prior to the language objected to by the defendant. Referring again to Special Instruction No. 1, *supra*, we find that the jury was told the proper standard or measure to apply was whether ''the defendant had reasonable grounds to apprehend and to believe *and did believe* * * *.'' (Emphasis added.)

In our opinion, if the language objected to were subject to the meaning insisted by the defendant, the error would be corrected by the other parts of the charge. But was it error? We believe that what the court was referring to in the portion objected to was the necessity for ''reasonable grounds to apprehend and to believe,'' as stated in defendant's own instruction. Viewed in that light, the language complained of is neither erroneous nor prejudicial and hence the first assignment of error is not well taken and must be overruled.

As before stated, the defendant's second assignment of error also relates to the court's charge and is divided into two parts. The language of the charge to which objection is made is set forth in the record and is as follows:

''If he intentionally fired the shot but did not intend to kill Lous [Lewis] Lupo or anybody else, then, of course, he would not be guilty of murder in the second degree, but he would be guilty of a lesser offense of manslaughter. Now, murder in the second degree provides that no person shall purposely and maliciously kill another. Now, if he killed another and it is not purposely done then it would be manslaughter, which provides that no person shall unlawfully kill another and if you find that there is a failure on the part of the state of Ohio to prove an intentional killing, but further that there was an unlawful killing, that Taylor by his action, unlawful action, killed Lupo, then he would be guilty of manslaughter * * *.''

It is the contention of defendant that the portion of the

court's charge above set forth is prejudicially erroneous for the following reasons:

"A. The fact that defendant fired the fatal shot intentionally is not sufficient per se to convict him of manslaughter.

"B. The court's general charge as applied to the law of manslaughter was wholly inadequate."

The statutory definition of the offense charged in the indictment, murder in the second degree (Section 2901.05, Revised Code), is as follows:

"No person shall purposely and maliciously kill another. Whoever violates this section, except in the manner described in * * * [sections dealing with higher degrees of murder] is guilty of murder in the second degree * * * [penalty]."

The statutory definition of manslaughter in the first degree (Section 2901.06, Revised Code), is as follows:

"No person shall unlawfully kill another. Whoever violates this section, except in the manner described in sections 2901.01 to 2901.05, inclusive, of the Revised Code, is guilty of manslaughter in the first degree, and shall be imprisoned not less than one nor more than twenty years."

The statutes above set forth relate to the offense charged in the indictment—murder in the second degree—which is a purposeful and malicious killing, and the included offense of which Taylor was found guilty—manslaughter in the first degree which is an unlawful killing, which lacks the necessary elements to raise the offense to one of the higher degrees.

It has been said that an offense is included in another, or stated another way that a lesser offense may be said to be included in a greater offense, when the greater includes every single element that goes to make up the lesser and in addition has other elements, and where the penalty for the greater offense is more severe than for the lesser offense. There can no longer be any question that manslaughter in the first degree is an included offense in murder in the second degree.

See *State* v. *Kuchmak*, 159 Ohio St., 363, 112 N. E. (2d), 371, decided May 6, 1953, in which Hart, J., wrote, at page 366:

"* * * The test for the determination of this problem is that, if all the elements of a separate offense are present with others in an offense charged in an indictment, such separate

offense is a lesser included offense; or, where all the elements of an offense are included among the elements of a charged offense, the former is a lesser included offense.''

Again, at page 367, Hart, J., in the *Kuchmak case, supra,* wrote:

''A court may not charge upon, and a defendant may not be found guilty of a lesser offense, unless the evidence tends to support each of the necessary elements of such offense. * * *'' (Citing *Bandy* v. *State,* 102 Ohio St., page 384.)

Also, on page 367, Judge Hart said:

''Typical examples of lesser included offenses are to be found within the offense of murder in the first degree, *i. e.,* manslaughter, assault and battery, and assault. All the elements of each are included in the elements of murder in the first degree. Under the statute, murder in the second degree is also included within murder in the first degree, as an offense 'including different degrees.' ''

And, at page 370, Judge Hart said:

''A person indicted for a superior offense may be convicted thereunder of a lesser offense, only where the indictment in form also charges the lesser offense. Thus, one charged with murder may be convicted of manslaughter even though there is no evidence of premeditation or malice aforethought to support the charge of murder, because there remains a sufficient charge in the indictment of the elements of manslaughter.''

The first part of the second assignment of error consists of the contention by defendant that the fact that the defendant fired the fatal shot intentionally is not sufficient per se to convict him of manslaughter. This apparently refers specifically to the first sentence of that portion of the court's charge set forth above. The second part of the second assignment of error, closely akin to the first, alleges that the court's general charge as applied to the law of manslaughter was wholly inadequate. We can agree that much more could and should have been said without agreeing that what was said was either erroneous or misleading.

Taking the general charge and the special instructions together we are of the opinion that it was free from erroneous statements prejudicial to the defendant. This leaves the ques-

tion whether the charge with reference to the law of manslaughter was adequate.

Defendant urges that it is the duty of the court to divide manslaughter into its two divisions, voluntary and involuntary, and that the failure of the court to do so is reversible error. Defendant relies on the holding in the case of *State* v. *Carter,* 75 Ohio App., 545, 58 N. E. (2d), 794, in which the seventh paragraph of the syllabus is as follows:

"It is prejudicial error for a court, in its charge to the jury as to manslaughter, in a case involving an indictment for murder in the second degree, to neglect to divide such subject into its two natural divisions, voluntary and involuntary manslaughter, and to fail to give a correct statement of the necessary elements which must be shown beyond a reasonable doubt to make a case, when so required by the evidence."

Skeel, J., who wrote the opinion, found many errors in the proceedings of the trial court, and the reference to the charge was near the conclusion when he criticized the charge as given for the reason that it "neglects to divide the subject into its two natural divisions, that is, voluntary and involuntary manslaughter, or to give a correct statement of the necessary elements."

Judge Skeel then continues, at page 555:

"Although these questions were directly drawn into the case by the evidence, the court's charge failed to define the elements of either voluntary or involuntary manslaughter, whereby the jury was left without a proper guide in its deliberations. While it may be that the court's failure was to the greater prejudice of the state, than of the defendant, yet, inasmuch as the case is to be retried, the inaccuracy of the charge should not go unnoticed."

Thus we find that the broad proposition laid down in the early part of the seventh paragraph of the syllabus is sharply limited by the phrase at the end, namely, "when so required by the evidence."

Counsel for defendant, in his reply brief, states:

"At no time during the trial of this cause did counsel request the court to charge on the offense of manslaughter."

That statement is fully supported by our examination of

the record. It is clear that if a request be made under proper circumstances for a charge as to included offenses, failure to do so is reversible error. See *State* v. *Quatman,* 96 Ohio App., 517, 122 N. E. (2d), 670, where Younger, P. J., at pages 519-520, wrote:

"Where such lesser grades are included in the original charge and become an issue in the case, the duty of the court to charge as to such lesser grades is no less than its duty to define the issues involved in the original charge. *Todor* v. *State,* 113 Ohio St., 377, 149 N. E., 326; 12 Ohio Jurisprudence, page 574.

"The bill of exceptions shows affirmatively that the defendant requested the court to charge upon the lesser offenses included under the indictment, to define the same and show what elements must be proven, which the court refused to do. * * *

"For the refusal of the court to charge as requested by the defendant, the judgment must be reversed and the cause remanded for further proceedings as provided by law."

See, also, 15 Ohio Jurisprudence (2d), 749, Criminal Law, Section 584, providing in part as follows:

"Whether, in the prosecution of a crime involving different degrees or including other offenses, an instruction should be given to the jury in regard to the degrees of the crime or as to included offenses, depends upon the issues raised by the evidence admitted during the trial. If the evidence is of such a nature as to warrant a conviction of any of the degrees of the crime or of an included offense, the court should instruct as to the different degrees or as to the included offense. On the other hand, if there is no evidence which would justify the jury in returning a verdict of guilty of a lesser degree of the crime or of an included offense, the court is not required to charge in regard thereto.

"Before a trial judge is required to instruct the jury upon included offenses the factual development must be such as would, if true, support a conviction of the included offense. If the evidence adduced is sufficient to warrant a conviction of a lower included offense, a refusal to charge as to the included offense is prejudicial to an accused who is found guilty of the

highest crime. If a lower degree or grade of the crime becomes an issue, the duty of the court to charge the jury with reference thereto is not different from the duty to charge with reference to the issue of the higher degree of the crime. In such a case, the omission of the court to charge the jury on the lessor degree or offense when requested by the defendant is prejudicial to him.''

As before stated, when the evidence warrants it is the duty of the trial court to charge upon lesser included offenses. Further, it has been held that the definition of manslaughter enacted into the criminal law of this state in 1835 (33 Ohio Laws, 33, Section 3) is not different either in substance or meaning from the definition set forth in Section 2901.06, Revised Code, even though the terminology is vastly different. The reason is, of course, that when the changes were made in the 1835 statutory definition they were done in connection with a codification or revision and hence presumptively at least the meaning was unchanged. The definition found in 33 Ohio Laws, 33, Section 3, is as follows:

''Section 3. That if any person shall unlawfully kill another without malice, either upon a sudden quarrel or unintentionally, while the slayer is in the commission of some unlawful act, every such person shall be deemed guilty of manslaughter, and upon conviction thereof shall be imprisoned in the penitentiary and kept at hard labor not more than ten years, nor less than one year.''

For comparison we set forth hereunder Section 2901.06, Revised Code, which is as follows:

''No person shall unlawfully kill another. Whoever violates this section, except in the manner described in sections 2901.01 to 2901.05, inclusive, of the Revised Code, is guilty of manslaughter in the first degree, and shall be imprisoned not less than one nor more than twenty years.''

It was held in *State* v. *Laswell,* 78 Ohio App., 202, 66 N. E. (2d), 555, that in the trial of a person for murder in the second degree the court is required to charge the jury both as to voluntary and involuntary manslaughter. Paragraph three of the syllabus thereof is as follows:

"Where the accused is tried for murder in the second degree, the court is required to charge the jury as to voluntary and involuntary manslaughter and, where the necessary elements of voluntary and involuntary manslaughter are defined, the failure of the court to elaborate on the elements of voluntary and involuntary manslaughter does not constitute prejudicial error."

To the same effect is the holding in the case of *State* v. *Carter, supra* (75 Ohio App., 545), wherein paragraph seven of the syllabus is as follows:

"It is prejudicial error for a court, in its charge to the jury as to manslaughter, in a case involving an indictment for murder in the second degree, to neglect to divide such subject into its two natural divisions, voluntary and involuntary manslaughter, and to fail to give a correct statement of the necessary elements which must be shown beyond a reasonable doubt to make a case, when so required by the evidence."

As above noted, defendant did not ask the court to charge on the offense of manslaughter, and, hence, it is that the defendant appears before the court today seeking to rely upon a general exception taken at the end of the entire charge and after the retirement of the jury.

The law in Ohio is clear both in civil and criminal cases that it is the duty of the defendant's counsel to call to the court's attention any errors of omission and that if counsel fails to do so such omission may not form the basis of error proceedings.

One of the early cases on the subject is *Columbus Railway Co.* v. *Ritter*, 67 Ohio St., 53, 65 N. E., 613, where the court held in paragraphs one and two of the syllabus as follows:

"1. Where the charge of the court is free from error prejudicial to the party excepting thereto, but fails to cover all the questions involved in the case, such failure is not a ground for reversal, unless it was called to the attention of the court, and further instructions requested and refused, provided the jury is not misled by the charge as given.

"2. A general exception to the charge of the court as now permitted by Section 5298, Revised Statutes, is effectual only

as to errors of law existing in the charge as given, and does not bring in review on error, an omission or failure to give further proper instructions.''

A similar holding in a criminal case is that of *State* v. *McCoy,* 88 Ohio St., 447, 103 N. E., 136, where the second and third paragraphs of the syllabus are as follows:

''2. Where, upon the trial of a person charged by indictment with shooting with intent to kill and shooting with intent to wound, the court properly charges the jury upon all the issues in the case, except that it inadvertently omits to charge that the defendant might, if the evidence warrants, be found not guilty of shooting with intent to kill and not guilty of shooting with intent to wound, but guilty of assault and battery, and the court's attention is not called to this omission, and no request to give such a charge is made, a judgment of conviction of the accused of shooting with intent to wound should not be reversed for such inadvertent omission of the court to so charge.

''3. A general exception to the charge of a trial court does not raise any question of error as to the omission of the court to give further correct instruction, but presents only questions of errors of law existing in the charge as given. (*Columbus Railway Co.* v. *Ritter,* 67 Ohio St., 53, approved and followed.)''

We also note the case of *Todor* v. *State,* 113 Ohio St., 377, 149 N. E., 326, where, in a *per curiam* opinion, at page 378 the court says:

''* * * Manslaughter having thereby become an issue, the duty of the court to charge the jury with reference thereto was not different from his duty to charge the jury with reference to the issues of murder in the first degree and murder in the second degree.

''The plaintiff in error made no request of the court to charge upon the subject of manslaughter, or upon any other subject. A general exception to the charge as given was taken by him, but no exception was taken to the failure of the court to charge upon the subject of manslaughter.

''The charge of the court was correct upon the subjects covered.

''An exception to the error of the court in not charging upon the subject of manslaughter was not saved by the general

exception, and this court may not reverse the judgment of a trial court for error in failure to charge to which no exception has been taken. *State* v. *McCoy,* 88 Ohio St., 447, 103 N. E., 136.''

A review of the developments of the law on this subject up to within the past five years may be found in the case of *Rhoades* v. *City of Cleveland,* 157 Ohio St., 107, 105 N. E. (2d), 2, where the syllabus is as follows:

''Where claimed errors in the charge of the court are errors of omission and not errors of commission, unless counsel has requested the court to supply the omissions, such errors of omission will not ordinarily justify a reversal. (Section 11560, General Code, applied.)''

Taft, J., in course of the opinion at page 109 says as follows:

''* * * However, where such errors in the charge of the court are errors of omission and not errors of commission, the general rule applies, and, unless counsel has requested the court to supply the omissions, such errors of omission will not ordinarily justify a reversal. * * *''

It follows, therefore, that a general exception is not sufficient and that failure to request the appropriate charge amounts to a waiver of the objection. It, therefore, becomes necessary to overrule both branches of the second assignment of error.

The third and final assignment of error relates to the sufficiency of the evidence. We have given careful study to the record in this case and have come to the conclusion that the case was carefully tried and we do not feel we can say as a matter of law that the evidence was insufficient to sustain the verdict. This assignment of error also must be overruled.

*Judgment affirmed.*

Petree, P. J., concurs.

Hornbeck, J., dissenting. I respectfully dissent from the majority opinion for the reason that the jury may have been and probably was confused by the general charge, Section 2945.83

(D), Revised Code. I fully recognize that the general exception of the defendant to the charge will reach only errors of commission. But, if considering the charge in its entirety, it may have confused the jury in its application of the law to the facts, the judgment should be reversed.

The majority opinion states the facts fairly and fully, which in their most favorable light to the defendant present the defense of self-defense, *Graham* v. *State,* 98 Ohio St., 77, 81, 120 N. E., 232, 18 A. L. R., 1272, and also a general defense against the charge of voluntary and involuntary manslaughter.

No distinction is made in the general charge between the two types of manslaughter which is held to be necessary in *State* v. *Carter,* 75 Ohio App., 545, 58 N. E. (2d), 794, the seventh paragraph. of the syllabus; *State* v. *Laswell,* 78 Ohio App., 202, 66 N. E. (2d), 555, paragraph five of the syllabus. In this case, both types of manslaughter were clearly projected into the record and should have been differentiated for the information of the jury.

The killing of Lupo, Jr., was admitted, but, against the charge of voluntary manslaughter, the defendant asserted that he did not intentionally shoot the deceased but that the discharge of the revolver was purely accidental. Although our Supreme Court has not spoken on the subject, an intentional killing is probably a material element of voluntary manslaughter as now defined in the statute. *State* v. *McDaniel,* 103 Ohio App., 163, 144 N. E. (2d), 683.

Against the charge of involuntary manslaughter, the defendant's testimony tended to prove that in the shooting which killed Lupo, Jr., he committed no unlawful act.

The state, to support the conviction of involuntary manslaughter, must prove the killing to have occurred in the commission of an unlawful act. Whether or not such a killing occurred was for the determination of the jury. It must further appear that the act committed was made unlawful by statute. *Johnson* v. *State,* 66 Ohio St., 59, 63 N. E., 607, 90 Am. St. Rep., 564, 61 L. R. A., 277; *State* v. *Schaeffer,* 96 Ohio St., 215, 117 N. E., 220, L. R. A. 1918B, 945.

Upon the facts as developed by the defendant, the jury could have found that when the second shot was fired which

killed Lupo, Jr., the defendant, in the situation as it appeared to him in the exercise of his faculties, believed and had good reason to believe that he was in imminent danger of great bodily harm.

When the defendant's attention was first directed to Offenberger, the drunken woman whom he was accompanying was screaming, and the circumstances could well have led the defendant to believe that Offenberger was abusing her. When defendant remonstrated with Offenberger, he left, but with the threat that he would return. He did return, and with him came seven or eight other young men with whom he had been drinking for hours. They did not come back deliberately but on the run. To the defendant they may have presented the appearance of a gang with a fixed purpose of getting even with him for his offense toward one of their number. They came up close to the defendant, menaced him, threw bricks at him or his associate and, finally, one of the number, a brother of Lupo, Jr., assaulted the defendant violently. All these occurrences were late in the night season. Admittedly, the defendant shot the first time merely to frighten the group which was menacing him. In the situation as it then appeared to the defendant, even before the final assault on him, the jury could have found that he acted in self-defense. If he was assaulted by Lupo at about the time and before he fired the second shot, the jury would have been justified in acquitting him on the ground of self-defense. It matters not that the evidence may, in our judgment, preponderate in favor of the conclusion that the assault on the defendant did not occur until after the second shot or whether he acted as a reasonable man in shooting the second time.

Let us then examine the general charge upon the foregoing factual developments. There is no doubt that it employed the reasonable man theory in charging the law of self-defense. It instructed the jury to test the action of the defendant in shooting Lupo, Jr., as a reasonable man. This form of charge has been repudiated in *State* v. *Sheets,* 115 Ohio St., 308, 152 N. E., 664; *Marts* v. *State,* 26 Ohio St., 162; *Nelson* v. *State,* 42 Ohio App., 252, 181 N. E., 448. In the *Sheets case,* the Supreme Court affirmed the Appellate Court which had reversed the trial judge upon the giving of a charge quite like the one which we

have under consideration. True, the special charge, given at the request of the defendant, properly stated the law of self-defense, but this did not cure the error in the general charge for the manifest reason that it is impossible now to determine which instruction the jury accepted as a correct statement of the law. 39 Ohio Jurisprudence, 928, Trial, Section 254, and the many cases there cited. The failure to properly charge on self-defense was prejudicially erroneous to the defendant.

The trial judge said to the jury that if the killing was accidental, the defendant should be acquitted. But, he also charged as follows:

"If he intentionally fired the shot but did not intend to kill * * * [Lewis] Lupo or anybody else, then, of course, he would not be guilty of murder in the second degree, but he would be guilty of a lesser offense of manslaughter."

This instruction said to the jury that, as a matter of law, if the defendant intentionally fired the second shot he thereby committed an unlawful act. This, in our judgment, was an invasion of the province of the jury. The charge in the following sentence states that the killing though unintentional, must have been unlawful, but this did not remove the fault in that part of the charge which we have quoted. Upon the whole, this sentence is substantially a reiteration of the quoted language above.

In *Martin* v. *State,* 70 Ohio St., 219, 71 N. E., 640, the court held that a predecessor statute to Section 3773.21, Revised Code, did not have application to "one who discharges fire-arms on his own premises" and that "one who unintentionally kills and shoots another by discharging fire-arms on his own premises is not thereby guilty of manslaughter." This statute now reads:

"No person shall discharge a firearm on a lawn, park, pleasure ground, orchard, or other ground appurtenant to a schoolhouse, church, or an inhabited dwelling, the property of another, or a charitable institution, or upon or over a public road or highway. This section does not prevent or prohibit the owner thereof from discharging firearms upon his own enclosure."

At the time *Martin* v. *State, supra,* was decided, the last sentence as it now appears in the foregoing statute was omitted.

Section 3773.04, Revised Code, makes it an offense to point

or aim a fire-arm at or toward another but provides that it must be intentionally done and also that it does not extend to cases in which firearms are used in self-defense. These are the only pertinent statutes which we find relating to the illegal discharge of firearms.

The facts as developed in this case present a close question as to the guilt of the defendant of any offense. It was, therefore, vital that the charge clearly present to the jury the law which should govern its resolution of the facts. It does not, in our opinion, meet the requirement.

The first and second assignments of error are well made. The conviction and sentence of the defendant should be reversed and the cause remanded.

HORNBECK, J., of the Second Appellate District, sitting by designation in the Tenth Appellate District.