**STATE, Plaintiff-Appellee v CARTER, Defendant-Appellant**

Court of Appeals, Eighth District, Cuyahoga County.

No. 19739.   Decided October 2, 1944.

546

Frank T. Cullitan, Cleveland, for plaintiff-appellee.
A. L. Steuer, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, J.

The defendant was indicted for the crime of murder in the second degree. It was the claim of the State that the defendant, Jimmie Carter, purposely killed Dorothy Carroll.

The defendant, with his wife and two other persons, had been drinking together during the evening of December 26th. About 1:00 o'clock A. M. of the 27th they all went in search of more liquor. When they arrived at a cafe on Scovill Avenue a quarrel developed between the defendant and his wife, and Dorothy Carroll who was a close friend of Mrs. Carter became involved in the argument, and a fist fight between Dorothy Carroll and the defendant resulted. In the course of the fight the defendant is alleged to have stabbed Dorothy Carroll, as a result of which she died. The cause was tried to a jury and a verdict of guilty to the included offense of manslaughter was returned.

It is the claim of the defendant that:

1. The verdict is against the manifest weight of the evidence.

2. That the court erred in admitting certain evidence over defendant's objection, and in the exclusion of evidence offered by defendant.

3. That the court erred in refusing to direct a verdict of "not guilty" as to the principal crime charged of murder in the second degree, on defendants motion made at the conclusion of all the evidence.

4. That the court erred in overruling defendant's motion for a verdict of not guilty at the conclusion of the State's case and at the conclusion of the taking of all the evidence.

5. That the court erred by invading the province of the jury as to the probative value of some of the evidence by saying in the jury's presence that the police officer "has no interest whatsoever except to tell the truth in the matter and let the jury do the rest of it."

6. The court erred in restricting the defendant in the number of character witnesses that he could call in his behalf, and in commenting on what such witnesses would say.

7. The court erred in its charge to the jury and also in refusing to charge applicable rules of law as was timely requested by the defendant.

8. That the defendant was not accorded a fair and impartial trial.

Defendant's assignments of error, Nos. 1, 3 and 4 are overruled for the reason that an examination of the record discloses that some evidence was introduced by the state in support of all the elements of the crime of murder in the second degree, which was of sufficient probative value to require the case to be submitted to the jury.

The appellant's second claim of error involves the ruling of the court in sustaining the state's objection to a question propounded to a state's witness on cross-examination by defendant's counsel. The record is as follows:

Mr. Steuer: "Have you ever been convicted of a crime of any kind?"

A. "No, sir, not like that."

Q. "Well, have you ever been convicted of any crime?"

(The court): "Just a moment. You know the rule. Let's not take advantage of the situation. You know the rule."

Mr. Steuer: "Does the court say the question is an improper question or not?"

The court: "You certainly know that."

Mr. Steuer: "No, I don't, Your Honor."

The court: "If you don't, it's about time you started getting acquainted with the rules."

Mr. Steuer: "Well, have you ever been convicted of a felony * * * * *." "Have you been convicted of anything else than what you have told us?"

Mr. Miner: Objection.

The court: Sustained.

Mr. Steuer: Exception.

The court: "In case you don't understand, Judge Steuer—"

Mr. Steuer: "I do not, Judge."

The court: "I will state the rule to you very plainly and simply. You may inquire of a witness as to whether or not he was ever arrested and convicted of a felony and that only—not a misdemeanor."

Mr. Steuer: "May I have an exception to that ruling?"

The court: "You may have your exception."

The rule as thus stated by the court is erroneous. **Section 13444-2 GC** provides in part:

"No person shall be disqualified as a witness in a criminal prosecution by reason of his interest in the event thereof as a party or otherwise, or by reason of his conviction of crime * * *. Such interest, conviction or relationship may be shown for the purpose of affecting the credibility of such witness."

It is to be noted that the legislature does not say that the conviction of a witness for a felony may be shown as affecting his credibility, but rather it is provided that his conviction of a crime may be shown for that purpose.

In the case of **Harper v State, 106 Oh St 481,** the defendant had been arrested and convicted of pocket picking. During the course of the trial the prosecutor, while cross-examining the defendant asked him if he had not been arrested and convicted of purse-snatching and when the defendant answered that he had not been convicted and fined for such crime the prosecutor, upon rebuttal, introduced the record of the Municipal Court of the City of Lima, to show his conviction of a violation of a state statute, to all of which the defendant objected. The testimony of such previous conviction thus relied upon, in part, at least, to challenge the defendant's credibility, involved a case which was a misdemeanor under state laws. The court, on page 404, in holding that such evidence was competent for that purpose, said:

"In order to aid the jury and the judge in determining this question to enable them to rightly and justly weigh the evidence, large latitude has been allowed in the cross-examination of those who are particularly interested in the result of a

verdict or judgment, and in all such cases, convictions of high crimes and misdemeanors, convictions of crimes under state and federal laws, have been considered by the courts as competent, when limited solely to the credibility of the witness, unless, of course, they bear some causal connection to the crime charged in the indictment, upon which the instant trial is proceeding, or unless competent in chief to prove some specific intent."

The following cases also support this statement of the rule:
   Cable v State, 31 Oh St 100;
   Kent v State, 42 Oh St 426.

In the Cable case, supra, Judge McIlvaine explains the reason why conviction under a municipal ordinance could not be shown for the purpose of affecting the credibility of a witness. On page 102 of the opinion the court says:

"Convictions for the violations of city ordinances never disqualified a person from testifying in any case and therefore such conviction cannot be shown under favor of this section (referring to what is now §13444-2 GC) for the purpose of effecting the credibility of the witness."

Whether or not under modern trends whereby the cities in Ohio have the right of home rule under charters adopted by the people upon constitutional authority, conviction of crimes defined by the ordinances of such city which have the effect of law and not just simple police regulations as earlier considered, should be excluded as a means of challenging the credibility of a witness, presents a serious question. At least the reason why such convictions could not be shown does no longer exist.

The appellants fifth assignment of error is concerned with a statement made by the court in the presence of the jury during the concluding arguments. Appellant's counsel while addressing the jury, said:

"Remember this, that the police officers are anxious for a conviction."

The court then interrupted him, as disclosed by the record, as follows:

"The court: Just a moment * * * there is no testimony here that the police officer is anxious for a conviction. You are completely outside the record, and you are directed to withdraw that statement from the jury."

Mr. Steuer: "I shall do as the court directs."

The court: "Police officers have no interest whatsover except to tell the truth in the matter and let the jury do the rest."

Mr. Steuer: "Well, is the jury bound to take the testimony of the officers as true?"

The court: "We will instruct the jury on the question of credibility of witnesses."

The court in its general charge instructed the jury as to their duty in considering the credibility of the testimony of the several witnesses. It seems clear, however, that such charge could not correct the prejudice that must have been suffered to the defendant's case by the court's statement that certain of the witnesses "had no interest but to tell the truth." Such a statement invades the province of the jury and constitutes prejudicial error.

The sixth claim of error is directed against the court's refusal to permit some of the character witnesses produced by the defendant to testify. The record discloses that after five character witnesses had been called and testified a Mr. Stewart was called to the stand to testify as a character witness. We quote from the record:

Mr. Steuer: "Call Mr. Stewart."

The court: "Another character witness? You have had five or six now. You don't have to bring more. Nothing added by parade of witnesses, all of whom will say he had a good reputation."

Mr. Steuer: "Except that they themselves are very highly respectable citizens, Your Honor, and the jury should know that."

The Court: "We think you have had enough of that sort of testimony."

Mr. Steuer: "All right. Exception. May I show a proffer of three more character witnesses and the order not to use them? Exception."

552

**Section 13444-18 GC** provides in part that:

"* * * * not more than ten witnesses upon each side shall be permitted to testify upon the question of character or reputation in a criminal cause, except as herein provided, unless his full per diem and mileage has been deposited or paid by the party in whose behalf he is sworn. * * * *."

While this section is concerned with preventing "the squandering of the public revenue and a waste of the time of the courts" * * * as stated by the Supreme Court in the case of **State v Stout, 49 Oh St 270, at page 278,** yet from the text of the statute it is made clear that the court is without power to limit unreasonably the number of witnesses called to give character or reputation testimony. It might be added that in commenting on such evidence, the statement that "nothing is added by parade of witnesses, all of whom will say he has a good reputation" would, in all probability, minimize the value of such evidence, mislead the jury in its consideration thereof and was, therefore, prejudicial to the defendant.

The seventh assignment of error concerns the refusal of the court to give certain instructions to the jury, as requested by defendant and also claimed errors with regard to parts of the charge as given by the court.

The requests to charge presented were all upon the subject of the necessity for the state to show that the defendant, before he could be found guilty of murder in the second degree, must be shown to have acted with intent and purpose to kill; that is, that the act which caused the death of the deceased, must have been committed by the defendant with the specific purpose and intent to cause the death of the deceased. Each request was a correct statement of the law. But the court overruled the requests on the ground that the subject had been fully covered in the charge as given. In this the court was correct. While the charges requested were more explicit than that given by the court, yet the charge as given was sufficiently complete so that the court did not commit prejudicial error in refusing the defendant's request. Likewise, the court's charge on the law of self-defense was an accurate and complete statement of the law.

The court's charge on defining manslaughter is wholly in-

adequate. The court, after reading §12404 GC which defines first degree manslaughter, said:

"So, should you find this defendant is not guilty of murder in the second degree, you will then turn your attention and see whether or not he may be guilty of manslaughter, and in connection with your consideration of this degree of crime, I must advise you that the elements of deliberation, premeditation and malice do not enter into the offense of manslaughter. A purpose to kill is not necessary for the completion of this crime, though the purpose to kill may exist where the killing was unlawful but without malice, as for instance, upon sudden quarrel, or under the influence of sudden passion and of course in this regard the same degree and certainty of proof is necessary that is, beyond a reasonable doubt."

The charge as thus given neglects to divide the subject into its two natural divisions, that is, voluntary and involuntary manslaughter, or to give a correct statement of the necessary elements which must be shown beyond a reasonable doubt to make a case.

Involuntary manslaughter is the unlawful and unintentional killing of a human being, said death directly resulting from the slayer's committing an unlawful act. The committing of the unlawful act must have been a proximate cause of the death. The evidence in this case required that the jury be instructed on the subject of involuntary manslaughter.

Voluntary manslaughter is the unlawful and intentional killing of a human being while the slayer is under the influence of a sudden passion or heat of blood produced by an adequate and reasonable provocation and before a reasonable time has elapsed for the blood to cool and reason to assume its habitual control. Malice is not an element of the crime, because though the killing is unlawful and intentional, it is considered that the adequate provocation resulting in sudden passion or heat of blood has momentarily deprived the accused of his reason and he is impelled to act by reason of the provocation and is, therefore, without the capacity to reflect. But the provocation must have produced such a degree of passion or rage that the mind is incapable of forming a malicious intent.

There are three elements to be considered in determining whether or not a purposeful killing should be reduced from murder to manslaughter.

1. The adequacy of the provocation; that is, was the provocation such as would produce a degree of anger, rage, passion or terror sufficient so that a man of reasonable temper would be incapable of reflection?

2. Did such provocation result in hot blood or uncontrollable passion on the part of the defendant?

3. Did the killing take place as a result of such provocation, while the slayer was in the heat of blood caused thereby and before a reasonable time has elapsed for the blood to cool, and reason to resume its habitual control.

John v State, 16 C. C. (N. S.) 316.

Zeltner v State, 13 C. C. (N. S.) 417, at page 426.

Although these questions were directly drawn into the case by the evidence, the court's charge failed to define the elements of either voluntary or involuntary manslaughter, whereby the jury was left without a proper guide in its deliberations. While it may be that the court's failure was to the greater prejudice of the state, than the defendant, yet inasmuch as the case is to be retried, the inaccuracy of the charge should not go unnoticed.

The court further concludes that defendant was not granted a fair trial, because of the errors which have herein been enumerated and therefore we sustain the defendant's eighth assignment of error.

For the foregoing reasons the judgment of the common pleas court is reversed and the cause remanded for further proceedings according to law.

MORGAN, PJ., LIEGHLEY J., concur.