Elijah McCLAIN and Margie Mae McClain, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15195.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Ernest D. Jackson, Sr., Jacksonville, Fla., for appellants.

Thomas A. Larkin, Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., for appellee.

Before TUTTLE, Circuit Judge, and DAWKINS and SIMPSON, District Judges.

SIMPSON, District Judge.

On the morning of February 23, 1953, Detective Sergeant Runyon and uniform Sergeant Anderson of the Jacksonville, Florida Police Department, visited the home of Elijah McClain, also known as Lige McClain, and Margie Mae McClain, his wife, in the sparsely settled northwest section of that city. Elijah was sitting on his back porch, and gave the officers permission to look around his yard and inside his house. No one else was there. The officers found nothing of interest, but noticed a dark blue 1940 Mercury sedan parked just off the dirt street behind Elijah's house.

In the early afternoon of the same day, the same two officers were patrolling north on Moncrief Avenue, near 15th Street in a Chevrolet police cruiser, with Anderson driving and Runyon as front seat passenger. This location is in the northwest section of the city, but considerably closer to downtown than the McClain home, and Moncrief Avenue is a main arterial street leading to the outskirts of the city. Here they met and recognized Elijah McClain driving south in the blue Mercury seen earlier in the day. Both officers recognized car and driver. Anderson recognized McClain's wife, Margie Mae McClain as being in the right front seat, and noticed that there was a third person in the car, seated either on the front seat also or on the rear seat. Runyon noticed that there were other persons in the car but did not, at this time, know their identity.

Traffic was light and the police car made an immediate U-turn and followed the Mercury south, about a block to half-block behind, at the same speed, but keeping the Mercury always in sight. At first, the Mercury was travelling slowly, but soon speeded up, to the extent that the officers decided to make a speeding or reckless driving arrest, but first to continue observation of the car and its occupants (actually no traffic arrest was ever made). After proceeding 10 or 12 blocks, the Mercury suddenly turned off into a side street, further increased speed, and began turning at each corner, circling and back-tracking over unpaved streets.

Alas, for Elijah, and alike alack, his steed, to his misfortune, was Mercury in name, but not in fact, and proved no match for the doughty police Chevrolet in pursuit. Further, Elijah possessed none of the miraculous powers of his illustrious namesake, so stirringly recounted in Kings and Chronicles.

Shortly, with the police car gaining steadily, and now almost on top of the Mercury, the Mercury slowed suddenly in the sand ruts of an unpaved street, and its occupants speedily abandoned ship. Margie Mae McClain and one Peter Thornton fell or jumped out the right side of the Mercury. Officer Run-

yon alighted and collared Peter Thornton and when Margie Mae stumbled and fell in the sand he apprehended her also. If Elijah was without miracles, he was not without speedy foot and stout wind, and in about a block through backyards, under clotheslines and over fences, he outdistanced and eluded Sergeant Anderson, who had taken out after him. Anderson gave up the chase and rejoined Runyon. The officers found two 5-gallon jugs filled with non-tax-paid moonshine whiskey between the front and rear seats of the Mercury. One jug was covered with a burlap bag and one was in plain view. A check of the records showed the Mercury registered to one Henry Williams at a different address than Elijah McClain's, and Henry was never found.

A few days later, Internal Revenue Agents "adopted" the case, Elijah McClain being arrested on a Commissioner's warrant. The three occupants were indicted and went to trial before a jury in the Court below on pleas of not guilty to a 1-count indictment, charging each with possession of the contraband whiskey, in violation of Title 26 U.S.C.A. § 2803(a).[1] The government proof was substantially as above set forth, and at the close of the government's case, and again at the close of all the evidence, motions for judgment of acquittal by each of the McClains were denied by the District Judge.

Elijah's defense was a denial of presence in the Mercury car and denial of possession or any knowledge of the moonshine whiskey. Margie Mae took the stand and accounted for her presence in the car by stating that it was driven by Henry Williams, that she and Peter Thornton bought vienna sausage and a loaf of bread at the market at Moncrief Avenue and 8th Street (a point between 15th and Moncrief, where the officers spotted the car, and 4th and Johnson Streets, where the chase ended); she testified she and Thornton entered the front seat of the car at that point, being picked up by Henry Williams; she denied connection with, or knowledge concerning the moonshine whiskey in the Mercury, asserting that she had no occasion to look in the tonneau of the car.

The officers, in rebuttal, testified that the Mercury made no intermediate stops after they started following it, and further that they found no vienna sausage and no bread when they searched it. Also, Margie Mae's testimony was strongly impeached in several particulars by a statement made to a Revenue Agent shortly after her arrest.

The trial jury returned verdicts of guilty as to each of the McClains, and reported failure to agree with respect to Peter Thornton's guilt. On motion of the government, the case was dismissed as to Thornton. Both McClains were adjudged guilty and received sentences in the custody of the Attorney General, Elijah for one year, and Margie Mae for two years.

Government counsel, in cross-examining both McClains, questioned them about prior convictions for crime, and made an abortive attempt to lay a predicate for impeachment by questioning them about prior City of Jacksonville Police Court convictions for liquor ordinance violations. Each defendant denied each of the convictions about which he or she was questioned. This tack was abandoned by the U. S. Attorney and the jury was fully instructed to disregard all questions along this line in the Court's general charge in the following language:

"Now, in this trial there were introduced, or questions were asked concerning former convictions, and they were denied, and the Government has not introduced any evidence to prove those, so those mat-

---

1. "(a) Requirement. No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal-revenue taxes imposed on such spirits. * * *" 26 U.S. C.A. § 2803(a).

ters are not in evidence before you and not to be considered.

"As far as you and I and everyone is concerned they were not; there were no former convictions of these defendants. And so you should disregard those matters—those questions and answers—as to both of those defendants entirely. You must do that and not consider that."

Both appellants here complain of error in this regard and urge it as ground for reversal.

■■■ Police Court convictions for violations of city ordinances are not convictions of crime. Crime is an act committed in violation of public law, a law coextensive in application with the boundaries of the state which enacts it.[2] Such a conviction is, therefore, not admissible as affecting the credibility of the defendants as witnesses.[3]

■■■ Moreover, since intent is not an element of the offense of possession of non-tax-paid spirits, the record of such convictions is not admissible here to show a prior course of similar actions, as evidence tending to prove intent. In our view of this case the records showing prior violations of city ordinances were not admissible for any purpose.

■■■ However, scrutiny of the record shows that each defendant denied being convicted in the Police Court on each case inquired about, and thus made no damaging admissions. The government attorney did not introduce any proof of any such convictions. Finally, in the language quoted above, the trial Judge clearly and specifically made it plain to the jury that these matters were entirely withdrawn from their consideration. No further instruction along this line was requested by the defendants, and indeed, nothing further was required. It is therefore our holding that no prejudicial error is made to appear in this connection.

■■■ We proceed to a consideration of the sufficiency of the evidence, which is the main additional ground urged by each appellant for reversal. The recital of the evidence hereinabove amply demonstrates that there was sufficient proof before the jury to justify the jury in finding Elijah McClain guilty.

As to Margie Mae McClain, we are convinced that this is not so. No concert of action was shown as to her, nor any act calculated to aid or abet the commission of the crime by Elijah, or by Peter Thornton, the other joint defendant. It may be inferred that she had knowledge that a crime was being committed (since one glass jug was uncovered and open to view, even to one riding in the front seat), but mere knowledge of the commission of the crime by another does not prove guilt. Nor does mere presence at the scene. Possession must be proved by some showing of dominion and control. This proof is entirely lacking here as to Margie Mae McClain. Her motion for judgment of acquittal was improperly denied at the close of the government's case, and again at the close of all the evidence.

Counsel for the appellee strongly urged in his brief and in oral argument that the weakness of the government's case against Margie Mae was cured by her taking the stand and the government's successful impeachment of her as a witness. But this simply gave the jury grounds to disbelieve her as a witness, and helped not at all to supply the fatal deficiency in the proof of her guilt. The government's proof was hence no stronger at the close of all the evidence than it was when the government rested its case in chief. Grounds only for suspicion and conjecture were still present: grounds for conviction were still absent. The other questions raised by the appellants are without merit and do not warrant discussion.

The judgment and conviction of the defendant Elijah McClain is affirmed;

2. Ex parte Hollwedell, 74 Mo. 395, 401; Carter v. Duluth Yellow Cab Co., 170 Minn. 250, 212 N.W. 413.

3. Neal v. United States, 10 Cir., 1 F.2d 637.

the judgment and conviction of the defendant Margie Mae McClain is reversed and set aside with directions to the trial Court to enter judgment of acquittal as to her.

Affirmed in part.

Reversed in part.