Robert James SMITH, Plaintiff-Appellant,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 14039.

United States Court of Appeals
Sixth Circuit.

Aug. 3, 1960.

David N. Gorman, Cincinnati, Ohio (Eugene D. Smith, Cincinnati, Ohio, on the brief), for appellant.

Thomas Stueve, First Asst. U. S. Atty., Cincinnati, Ohio (Hugh K. Martin, U. S. Atty., Columbus, Ohio, Richard H. Pennington, Asst. U. S. Atty., Cincinnati Ohio, on the brief), for appellee.

Before CECIL and WEICK, Circuit Judges, and HOLLAND, Senior District Judge.

CECIL, Circuit Judge.

Smith was convicted by a jury in the District Court of the offense of telephoning the federal agency in charge of the Control Tower at the Greater Cincinnati Airport, false information that a bomb was on an outgoing civil aircraft. Title 18 U.S.C. § 35. He was fined $1,000 and sentenced to imprisonment for one year.

In his appeal, Smith claims the Trial Court erred in excluding testimony offered by the defense tending to impeach the Government witness Tony Hoobler. On direct examination Hoobler testified that he was in the office of King Bonding Company in Cincinnati when Smith made the telephone call in question and overheard Smith tell the airport authorities that there was a bomb on an outgoing aircraft. Smith was the manager of the bonding company, of which his wife was the owner.

On cross-examination, Hoobler was asked whether he made a statement to Donald Chapman on or about April 2, 1959 in a room at the Town Center Motel that he would get Bob Smith one way or the other and it didn't make any difference how. His answer was "No, Sir."

Chapman was called as a defense witness and asked whether Hoobler had made any statement to him relating to Mr. Smith on any occasion he saw him in April and May. The prosecutor objected to the question but Chapman answered it "Yes" before the Court could pass on the objection. The Court sustained the objection but did not strike the answer or instruct the jury to disregard it. Chapman was then asked "On any occasion did you ever hear Mr. Hoobler make any threats toward Mr. Smith?" The Court sustained an objection to the question and defense counsel proffered an answer that Chapman would testify if permitted to the following statement made to him in his hotel room: "Tony Hoobler made the statement that he would get Mr. Smith one way or the other and it made no difference how."

The form of the question was objectionable since it called for a conclusion and did not fix a proper time or place. Whether this statement constituted a threat would have been for the jury to determine if it had been admitted in evidence. The Trial Judge was within his rights in sustaining the objection which had been interposed. It would have been proper for defense counsel to have asked Chapman whether Hoobler made the particular statement to him on or about April 2, 1959 in said motel room that he would get Mr. Smith one way or the other and it made no difference how. The foundation had been laid for the asking of such a question on the cross-examination of Hoobler. That question was not asked Chapman. While hindsight enables us to see that the question asked was intended to elicit competent evidence, the Trial Court had to rule on the nature of the question itself and was correct in considering it as improper.

On cross-examination defense counsel asked Hoobler whether or not in the

early evening on or about April 5, 1959 he told Chapman that he and his brother would eliminate Mr. Smith from the bail bond business so that he (Hoobler) could move in. Hoobler's answer was "No."

Chapman was asked by the defense on direct examination whether he ever heard Hoobler make a statement directly to him relating to the bail bond business. The Court sustained an objection to the question and an answer was proffered that Hoobler denounced Smith and stated that he would say or do anything to put Smith out of business.

It will be noted that the proffered answer was not responsive to the question to which the objection was sustained. Hoobler had been asked on cross-examination about making a statement on or about April 5, 1959. The question addressed to Chapman was whether Hoobler *ever* made a statement. The relevant time was on or about April 5, 1959 and not whether he *ever* made any such statement. Furthermore, it was not relevant whether Hoobler made a statement concerning the bail bond business generally as this would not indicate bias or prejudice. The relevant part, which the defense did not ask, was whether Hoobler made the statement to Chapman that he and his brother would eliminate Mr. Smith from the bail bond business so that he (Hoobler) could move in. The question propounded could have been answered "Yes" or "No" and if so answered it would not impeach Hoobler.

Another question asked Hoobler on cross-examination to lay a foundation for impeachment by Chapman was, "I will ask you if at that time (8th or 9th of April) you didn't make the statement that you would pin something on Mr. Smith?" Mr. Hoobler denied making such a statement. Mr. Chapman was then asked in substance if at any time the Hoobler brothers, came to his motel and if so what happened out there. This was not a proper question to rebut the answer given by Hoobler to the question asked on cross-examination. The proffered answer was wholly unresponsive and was

calculated to inflame the jury against Hoobler. It referred to Tony carrying a gun (with no hostile motive toward the defendant apparent) and finally contained no statement that he would pin something on Smith.

The questions asked Chapman did not properly elicit the information concerning which the foundation had been laid. The Trial Judge was fully justified in sustaining the objections. In making his rulings the Judge said: "It's a collateral matter anyhow." We think the substance of the questions asked on cross-examination was a proper subject of impeachment. The Trial Judge would have been in error had he sustained the objections only on the ground that it was a collateral matter.

▆▆ The defense had a right to impeach Hoobler by asking him questions on cross-examination tending to establish bias or prejudice on his part against the defendant. Defendant was not concluded by Hoobler's answers to the questions put to him, but had the right to offer proof through other witnesses tending to show that he did make the statements claimed.

Smith asserts that the Court erred in excluding testimony of defense witness Evelyn Walters, concerning an alleged conversation between the Hoobler brothers, on February 11, 1959.

▆▆ Directing the witness's attention to February 11, she was asked if she heard any conversation between Tony Hoobler and Richard Hoobler concerning Mr. Robert Smith. No foundation had been laid for this question on the cross-examination of either of the Hoobler brothers. Furthermore, the time of day, place and circumstances of hearing this alleged conversation were not fixed. The witness was asked if she had occasion to visit Smith's office and she said: "Yes, I have." Finally, the proffered answer: ("Let him have his fun now. It won't be long. This is a swell set up.") does not in itself show hostility. They appear to be words taken out of context, spoken two months before the indict-

ment, with no indication that they had any reference to the crime for which Smith was being tried.

It is further claimed that the Court erred in excluding testimony of defense witness Eunice Mae Coon, concerning an alleged conversation between the Hoobler brothers and Robert Frye, on February 6, 1959.

■ The witness was asked if at any time when she was in Mr. Smith's office she heard any conversation between the Hoobler brothers and Frye, about a bomb hoax. An objection was made and a colloquy between Court and counsel followed. The prosecution claimed it was hearsay because Mr. Smith was not present. Defense counsel contended that it was part of the res gestae. The Court sustained the objection on the ground that it was hearsay.

Clearly, it was not a part of the res gestae. It was a week after the crime had been committed, a casual conversation and nothing to do with the promotion of the crime. In Smith v. United States, 9 Cir., 47 F.2d 518, 521, it was said: "In any event, the overwhelming weight of authority holds to the rule that, unless the complaint is so closely connected with the time or place of the crime as to form a part of the res gestae, the details of what the prosecuting witness said, and particularly the naming of the person accused of the crime, cannot be proved on direct examination." The statements must form a part of the main transaction. Bruce v. United States, 8 Cir., 73 F.2d 972, 974. It was stated in Busch v. United States, 8 Cir., 52 F.2d 79, 88: "This declaration, to be admissible as part of the res gestae, must have been a spontaneous utterance of the mind while under the influence of the transaction." See also: Barshop v. United States, 5 Cir., 191 F.2d 286, 292.

Defense counsel implicitly recognized Mrs. Coon's testimony as hearsay, in attempting to qualify it as res gestae, an exception to the hearsay rule. This position has been shifted in this Court, and it is urged upon us that the testimony was being offered for impeachment to show bias and prejudice, and, therefore, not subject to the objection of hearsay.

■ We are of the opinion that even if this proffered testimony was in fact offered for the purpose of impeachment, it was still inadmissible. The defense claims that by this testimony they did not seek to rebut any direct evidence or to destroy any link in the chain of circumstances by which the prosecution had sought to establish the facts of the commission of the crime. It sought only to discredit three of the Government's witnesses for hostility, bias and prejudice, as alleged in the defendant's brief. This it had a right to do. Testimony, the truth of which is not to disprove the crime but which if believed would tend to discredit witnesses, cannot be classed as hearsay. United States v. 88 Cases, More Or Less, Containing Bireley's Orange Beverage, 3 Cir., 187 F.2d 967, 974; Carantzas v. Iowa Mutual Insurance Co., 5 Cir., 235 F.2d 193, 196; Young v. State Farm Mutual Automobile Insurance Co., 4 Cir., 244 F.2d 333, 337.

■ There was no foundation laid for this offered testimony in the cross-examination of the three witnesses involved. There is a conflict of authorities on this principle. Some courts hold that it is not necessary to lay a foundation as a prerequisite for the impeachment of a witness for hostility, bias or prejudice. Other courts take the view that such testimony cannot be admitted unless the way is first paved by questions on cross-examination. See: 58 Am.Jur. 385, Witnesses, Section 714, and 3 Wigmore on Evidence 498, Section 948. These conflicts exist mostly in the state courts. We find only three Court of Appeals cases on the subject. Ewing v. United States, 77 U.S.App.D.C. 14, 135 F.2d 633, certiorari denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145; Greatreaks v. United States, 9 Cir., 211 F.2d 674; and Burton v. United States, 5 Cir., 175 F.2d 960, certiorari denied 338 U.S. 909, 70 S.Ct. 347, 94 L.Ed. 560. The first two hold that no foundation is required, while the third takes the opposite view.

We think the better rule is to require a foundation to be first laid. By laying a basis for such testimony on cross-examination, counsel is advised of what he may have to meet and can ascertain if he needs to call other witnesses or prepare his answer, if any there be. When such testimony is brought in extrinsically, opposite counsel is taken by surprise and has no opportunity to meet the unexpected situation. Surprise is not favored in the Federal Courts. Considering the substance of the proffered answer, it seems that it was no mere coincidence that Eunice Mae Coon was the last defense witness.

With this discussion as to the nature of this evidence and the method of offering it, we look to the subject matter of the proffer. The proffered answer contained four paragraphs of alleged statements made by Frye, Dick and Tony Hoobler. Only one sentence of this might be classed as showing any bias or prejudice, and that against Tony Hoobler.

We conclude that the testimony of this witness was properly excluded, first, because no question was asked on cross-examination to lay a foundation for impeachment, and, secondly, for the reason that the proffered answer was not responsive to any proper question calling for an answer to show bias or prejudice of a witness.

■ Defendant claims error in the failure of the Court to define the issues. At the close of the Court's charge to the jury the Court said: "Now is there anything from either counsel?"

Mr. Stueve: "Nothing from the Government, Your Honor."

Mr. Smith: "Nothing from the defendant, Your Honor."

No exceptions to the charge were taken by either counsel.

The Court read the indictment to the jury and the applicable statutes. He also defined various terms in the statutes. He defined the word "Willfully." He instructed on burden of proof and reasonable doubt. At the request of defendant he gave a special charge on alibi.

He instructed the jury that if they find that the Government has proven the commission of the crime charged beyond a reasonable doubt, they should return a verdict of guilty. If, on the other hand, they find that the Government has not proven every essential element of the crime charged, then their verdict should be not guilty.

The issues in the case were relatively simple. The statute was clear. There was no dispute that a telephone call had been made to the airport authorities that a bomb was on an outgoing aircraft and that such message was false. Such a call was plain violation of the statute. The only issue in the case was whether defendant had made the telephone call. If he had made it he was guilty. In our judgment, the charge of the Court was entirely adequate. See: Rule 30 and Rule 52, Federal Rules of Criminal Procedure, 18 U.S.C.A.; Morris v. United States, 9 Cir., 156 F.2d 525, 169 A.L.R. 305.

■ Smith claims that prejudicial error was committed by the Assistant United States Attorney in his cross-examination of the defense witness Harold Shapiro concerning prior criminal convictions. Shapiro had testified on direct examination to an alibi for Smith. The court notes with disapproval the form of the question used by counsel to inquire about former convictions. The question to which no objection was made is "How many times have you been convicted of a state or federal offense?"

It would appear that Shapiro in his answer volunteered the information about his trouble with the city authorities over some refunds. He was then asked whether it was a state offense and he said he believed it was a city offense.

Defense counsel objected and Shapiro was then asked whether he had been convicted in the Police Court of Cincinnati on April 4, 1958 of the offense of larceny by trick, which was a violation of Ordinance No. 438–1951 of the City of Cincinnati. This offense is also a violation of state law. Revised Code of Ohio, § 2907.21. The offense under the state law

is a felony, if the amount involved is over $60.00. If the amount is less than $60.00, it is a misdemeanor. The offense under the ordinance is a misdemeanor. Following discussion between counsel and the Court, the Court concluded there was some question about the admissibility of the evidence and refused to admit it. No further objection was made by counsel for defendant. No motion was made to instruct the jury to disregard the questions. Under such circumstances we do not believe there was any prejudicial error. Cf. McClain v. United States, 5 Cir., 224 F.2d 522.

If the conviction under the ordinance was admissible, any error in excluding the evidence was against the Government and certainly defendant cannot complain of a ruling in his favor.

■ The type of questions permitted to impeach a witness are those which show that he committed a felony or crime involving moral turpitude. Henderson v. United States, 6 Cir., 1953, 202 F.2d 400, 405; Coble v. State, 31 Ohio St. 100; Harper v. State, 106 Ohio St. 481, 140 N.E. 364; Kornreich v. Industrial Fire Ins. Co., 132 Ohio St. 78, 5 N.E.2d 153.

It would not be proper to show for impeachment purposes that the witness had been convicted of disorderly conduct, of violating the traffic laws of either state or municipality or that he was convicted of crimes not involving moral turpitude. Coble v. State, supra; State v. Hickman, 102 Ohio App. 78, 141 N.E.2d 202.

■ Larceny by trick is an offense which, in our judgment, involves moral turpitude whether the amount stolen is more or less than $60.00 or may be prosecuted under state law or municipal ordinance. Cf. Pearson v. United States, 6 Cir., 192 F.2d 681, 699. Treating the offense as a misdemeanor does not make it any the less heinous and does not lessen lack of good character of the offender. In State v. Hamm, Ohio Com.Pl., 104 N.E.2d 88, it was held that convictions in a magistrate's or mayor's court

on an affidavit based upon the provisions of a municipal ordinance may be shown if such offense is also a crime defined by statutes enacted by the legislature.

In State v. Carter, 75 Ohio App. 545, 58 N.E.2d 794, it was pointed out by the Court that municipalities operating under charter form of government have all powers of local self-government and may enact ordinances not inconsistent with general law. id. 551.

■ The Court considers further that the inquiry into the matter of the witness' request to be discharged from the Air Corps was not a proper subject of cross-examination. No error was assigned in this respect and we do not find that the use of these questions constitute plain error. Rule 52(b), Federal Rules of Criminal Procedure.

Other points have been argued, but we believe them to be without merit.

The judgment is affirmed.

HOLLAND, Senior District Judge (dissenting).

Appellant was indicted, convicted by jury and sentenced to one year in the custody of the Attorney General and to pay a fine of $1,000.00, to stand committed until paid, for a violation of Section 35, Title 18, U.S.C.

The one-count indictment reads as follows: "That on or about January 30, 1959, at Cincinnati, Ohio, in the Southern District of Ohio, Western Division, Robert James Smith did willfully impart and convey and cause to be imparted and conveyed, false information, knowing the same to be false, concerning an attempt and alleged attempt being made and to be made to willfully place and cause to be placed a destructive substance, to wit: a bomb, in, upon and in proximity to a civil aircraft used, operated and employed in interstate commerce with intent to damage, destroy, disable and wreck such aircraft, a crime prohibited by Section 32, Title 18, United States Code; a part of Chapter II, Title 18, United States Code, by telephoning from Cincinnati, Ohio to Paul V. Downs, an

Air Ways Operation Specialist employed by the Federal Aviation Agency in the Control Tower of the Greater Cincinnati Air Port, Boone County, Kentucky, false information to wit: that a bomb was on an outgoing aircraft; in violation of Section 35, Title 18, United States Code."

Five assignments of error are involved in this appeal. For convenience of discussion, they will be considered out of their assigned order.

Assignment Number III is as follows: "Did the District Court err in failing to instruct the jury of the elements of the offense charged?"

The District Judge could well have pin-pointed the issues to be decided in language somewhat of this type: Section 32 aforesaid makes it criminal to actually damage, destroy, disable or wreck civil aircraft used, operated or employed in interstate commerce, then next makes it criminal to intentionally place or cause to be placed any destructive substance in or upon or in proximity to such aircraft, and thirdly, provides for the imparting of false information concerning the same subject in language as follows, and then quote Section 35. Now I have told you that you are the sole judges of the facts, and that any expression of mine as to the facts is not binding on you. With this admonition I now charge you that as I see the case there is no fair inference from the evidence but that the telephone call to the airport was the conveyance of false information concerning an alleged presence of a bomb, as described in the said statute, thereby leaving for your decision the determination of the issue as to whether the defendant was or was not guilty of conveying such false information or causing same to be conveyed and whether it was willfully and intentionally conveyed.

While such an additional charge of this nature could well have pin-pointed the issues submitted to the jury after they had sat in such a prolonged and tedious case, yet the charge given was not erroneously given. In fact defense counsel was asked to express himself as to the charge at its conclusion and counsel for the defense did not object to the charge as given. The Court's charge not only covered the statutes involved and the general charges, but included a well prepared charge on the alibi defense. I see no ground for upsetting this judgment on the basis of Assignment of Error Number III. Conley v. United States, 6 Cir., 257 F.2d 141.

Assignment Number II is as follows: "Did the District Court err in prohibiting the defense counsel from pointing out in final argument that there was a lack of evidence in the form of records as to the making of the call from appellant's office and then permitting the prosecutor to insert unsworn, incompetent evidence on this point in his argument?"

Interruptions by opposite counsel during the closing arguments to the jury are unfortunate and as nearly as possible they should be frowned upon by the Trial Judge with the observation by the Court that the jury is to draw its conclusions as to the facts from the evidence alone and reasonable deductions to be drawn therefrom. Attempts by the Court during the arguments to analyze and settle disputes between counsel as to just what is in the evidence lead to disorderly procedure. Counsel imbued with the rightness of their positions often make the task of the Trial Judge difficult and such was the case here. Interruptions, however, of the opposing counsel during argument are to be discouraged, leaving the objecting counsel to answer in his closing argument, and leaving to counsel not enjoying an answering opportunity, the right to apply to the Judge for relief, such as he, the Judge, may dispense in the exercise of a sound discretion. In this case, the actions of the District Judge were in the exercise of a sound discretion.

Assignment of Error Number IV is as follows: "Was it error for the District Court to call the defense counsel before him just prior to the opening of the case for the defense, accuse him of unethical conduct, and warn him that he would be

held personally responsible for the testimony given by defense witnesses?"

During the examination of Government witness Laurence Pittman, the court queried defense counsel as to a subject matter as to which defense counsel had alluded in defendant's opening statement to the jury. The defense counsel had stated that the defense proposed to show that several persons (later called as government witnesses) had conspired to place the blame for the making of the "hoax bomb" telephone call on defendant Smith. The Trial Judge concluded that defense counsel intended to show who did make the call as well as proving that the defendant had not done so. This incident led to the Court alerting the agents of the Federal Bureau of Investigation for possible perjury, and to the Court, in Chambers, advising defense counsel that this had been done. The defendant by this Assignment of Error claims that defense counsel was sorely handicapped in presenting the defendant's evidence. Reference by defense counsel to an alleged conspiracy by persons (later called as Government witnesses) to place guilt for the call on defendant could well have the double implication of not only holding defendant guiltless but also of directly placing guilt on members of the conspiracy. Different constructions by court and counsel led to this unfortunate situation complained of by this assignment. The matter was one which addressed itself to the sound discretion of the Trial Judge and there was no reversible error in actions taken by him.

Assignment of Error Number I is as follows: "Should the District Court have admitted the evidence of witnesses called for the defense which would have shown the bias, prejudice and hostility of key prosecution witnesses toward defendant, shown the existence of a plot or scheme against the defendant, and impeached statements made by a prosecution witness earlier in the trial?"

There is merit to this assignment. Government witness Anthony D. Hoobler on cross-examination denied making a statement to Donald Chapman "that he would get Bob Smith (defendant) one way or the other and it did not make any difference how." Later in the case Donald Chapman was called as a defense witness, and under the rulings of the Court the defendant was denied the privilege of impeaching Tony Hoobler's testimony that he is not hostile to the defendant. This evidence was proffered by the defendant and the objection to the proffer was sustained. This was error. The attempt to impeach the credibility of Anthony Hoobler was important to the defense and the denial of the proffer was reversible error.

The denial of the proffered evidence of Evelyn Walters and Eunice Mae Coon was right. Witness Evelyn Walters was not allowed to testify as to conversations heard by witness between Anthony D. Hoobler and Richard Hoobler, which did not take place in the presence or hearing of the defendant. Neither was defense witness Eunice Mae Coon allowed to testify as to overheard conversations between Anthony D. Hoobler, Richard Hoobler and Bob Frye which did not take place in the presence or hearing of the defendant. It would have been proper for these witnesses Anthony Hoobler, Richard Hoobler and Bob Frye to have been questioned by defense counsel as to whether they made such statements, when denials by them, if made, would have laid a predicate for the admissions in evidence of the "Walter's" and "Coon's" proffered evidence.

The defense not only contended that this evidence was admissible as proof of a conspiracy but proposed the theory of res gestae as making this proffered evidence admissible. The theory of res gestae as extending beyond the making of the "bomb" telephone call is not well taken. There was no error in denying the proffered "Walter's" and "Coon's" evidence.

Assignment Number V is as follows: "Did the District Court err in permitting the United States Attorney to improperly cross-examine the defense key witness Harold Shapiro about an alleged offense which was not a state or federal offense

over the insistent and repeated objections of defense counsel?"

The witness Harold Shapiro was an important and key witness for the defense. His credibility was of the utmost importance. He was by the government sought to be discredited by reason of his having been convicted of a Police Court charge.

Commission of crime is admissible on the question of credibility, but the crime must measure up to felonious significance or involve moral turpitude. The government contends that the municipal ordinance, a violation of which Shapiro was convicted, was patterned after and embraced the elements of the state statute making criminal "larceny by trick." That statute is Section 2907.21 of the Ohio Revised Code, and reads as follows: "No person shall obtain possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by false or fraudulent representation, pretense, token, or writing."

The government further contends that the statute makes the offense both felonious and of a misdemeanor type, since it could have been prosecuted as a felony provided the amount involved justified same. The case was prosecuted in the Police or Municipal Court, a court not having jurisdiction for the prosecution of felonies.

Inasmuch as this improper attack upon the credibility of the witness Shapiro is a prime reason for my dissent, I wish to analyze the ruling in detail.

The basic rule on this subject in this circuit is stated in Henderson v. United States, 6 Cir., 202 F.2d 400, decided in 1953 and cited in United States v. Tomaiolo, 2 Cir., 249 F.2d 683. The rule is that for impeachment purposes the crime committed must be a felony or one involving moral turpitude. Incidentally, it is quite interesting to read the case decided by this court, Circuit Judge Taft speaking, as far back as 1893, in the case of Baltimore & Ohio R. Co. v. Rambo, reported in 6 Cir., 59 F. 75.

The term "moral turpitude" as used in the Henderson case, means in a case prosecuted in a court of record. McClain v. United States, 5 Cir., 224 F.2d 522. United States v. Tomaiolo, 2 Cir., 249 F.2d 683. I voice no opinion as to whether the larceny by trick statute quoted, as its provisions may be carried into the City Penal Code of the City of Cincinnati, carry the chastisement that such is or is not a crime involving moral turpitude, but I do think that the successful prosecution of the witness Shapiro in the City Court for the violation of a City Ordinance patterned after the state statute quoted, was improperly used by the government to discredit the credibility of said witness.

The attempt to discredit the witness Shapiro was further objectionable, in the cross-examination, as to witness Shapiro's honorable discharge from the Armed Forces. Such examination was calculated to unduly prejudice him before the jury. This was a collateral matter altogether.

While this was reversible error yet I cannot refrain from commenting on the action of the defense counsel, wherein he was guilty of a like offense in his cross-examination of government witness Laurence Pittman. The cross-examination of witness Pittman was with reference to guilt in a traffic offense prosecution. While both government and defense were alike vulnerable, the success of the defendant does not negative the error of which the defendant justifiably complains.

I dissent to the affirmance of this case, as I think that the judgment should be reversed and the case remanded for a new trial.