UNITED STATES of America,
Plaintiff-Appellee,

v.

Benjamin PITTMAN and Annie Laura
Pittman, Defendants-Appellants.

No. 29868

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 22, 1971.

Rehearing Denied March 25, 1971.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409.

Edward T. Garland, Garland & Garland, Reuben A. Garland, Robert G. Fierer, Atlanta, Ga., for appellants.

Robert L. Smith, Asst. U. S. Atty., John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

The Pittmans, husband and wife, were tried jointly on five counts of an indictment alleging violations of 26 U.S.C. §§ 4704(a)[1] and 4705(a).[2] The jury returned a verdict of guilty on the first four counts and acquitted the defendants as to Count V. Subsequently the trial judge, acting pursuant to the Supreme Court's decision in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L. Ed.2d 610 (1970), vacated the judgment as to Count III. From their convictions on Counts I, II and IV the defendants appeal, alleging that the admission of certain prejudicial evidence rendered the trial fundamentally unfair as to them, and that the judge erred in cautioning the jury as to the credibility of Mrs. Pittman's testimony. We find no error, and affirm.

The Government based its case against the Pittmans on four incidents alleged to have taken place at their residence in Atlanta in the months of July and August of 1969:

1.  *July 30 or 31.* Sale of heroin by both defendants to Federal Narcotics Agent Albert L. Parrish, Jr., in the company of one Thomas Eugene Harris, who did not then know that Parrish was a federal officer.

2.  *August 26.* Sale of heroin by Mr. Pittman to Harris alone, who purchased it with funds supplied by Agent Parrish. Harris was arrested late on August 26 and induced to cooperate with the Federal Narcotics Bureau.

3.  *August 27.* Sale of cocaine by Mrs. Pittman to Agent Parrish, with Harris again present as the go-between.

4.  *August 29.* Search of the Pittmans' house and yard by federal, state and local law enforcement officers, pursuant to a federal search warrant. The officers allegedly found a quantity of heroin concealed in a knotted sock under a bush in the Pittmans' front yard.

Counts I and II of the indictment were based on the July 30–31 transaction, Counts III and IV on the August 27 transaction, and Count V on the fruits of the August 29 search. At the trial Harris and Parrish testified for the Government, as did two other Federal Narcotics Agents and a Narcotics Bureau chemist, a special agent of the Georgia Bureau of Investigation, and an investigator from the Fulton County District Attorney's office. The defense called one witness, Mrs. Pittman, who

---

1.  26 U.S.C. § 4704(a) provides that

    It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

2.  26 U.S.C. § 4705(a) provides that

    It shall be unlawful for any person to sell * * * or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold * * * on a form to be issued in blank for that purpose by the Secretary or his delegate.

testified that she and her husband knew Harris, but that they had never at any time sold narcotics to Harris or Parrish.

Counsel for the Pittmans objected consistently at the trial to the introduction of testimony concerning the alleged August 26 transaction with Harris, a transaction not charged in the indictment. The trial judge, in admitting the evidence, cautioned the jury that the Pittmans were not on trial for that transaction, and that evidence pertaining to it was admissible only for the light it might shed on the transactions charged. The appellants contend that the evidence was relevant solely to stigmatize them as "pushers," that it was inadmissible for that purpose, and that its admission prejudiced them to such a degree as to warrant reversal of their convictions on all counts.

■■ As a general rule, in a criminal case, "the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." C. McCormick, Handbook of the Law of Evidence § 157 at 327 (1964). The rule is one of long standing in the federal system. *See* Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077 (1892); Fabacher v. United States, 5 Cir., 1927, 20 F.2d 736. It bars the introduction of evidence of other criminal acts of the accused *only* where the relevancy of such evidence depends on an inference from the other criminal acts to the character of the defendant, and thence to the defendant's guilt as charged. Michelson v. United States, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948); 2 C. Wright, Federal Practice and Procedure § 410 (1969). Thus, for example, it is established in this Circuit that such evidence "will be received for the purpose of showing knowledge, intent, motive, design or scheme where such element is an essential of the commission of the offense." Ehrlich v. United States, 5 Cir.,

1956, 238 F.2d 481, 484; *see* Weiss v. United States, 5 Cir., 1941, 122 F.2d 675, 681–685, cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550 (1941). However, when district courts in this Circuit, in prosecutions involving offenses which require no specific intent for their commission, have admitted evidence of other similar offenses on the part of the accused "to show intent," this Court has reversed. *See* Hamilton v. United States, 5 Cir., 1969, 409 F.2d 928, (26 U.S.C. § 5205(a) (2), sale of nontaxpaid whiskey); Baker v. United States, 5 Cir., 1955, 227 F.2d 376 (26 U.S.C. § 5601, illegal operation of a still); Helton v. United States, 5 Cir., 1955, 221 F.2d 338 (illegal acquisition and production of marijuana); *cf.* Teate v. United States, 5 Cir., 1961, 297 F.2d 120; McClain v. United States, 5 Cir., 1955, 224 F.2d 522.

■■ In support of the trial judge's evidentiary ruling in the instant case, the Government offers the standard "knowledge and intent" justification. We have some doubt that it applies here. Sections 4704(a) and 4705(a) of 26 U.S.C. contain no reference to a particular state of mind, and the limited case authority on the point suggests that neither knowledge nor intent on the part of the accused constitutes an element of either offense. *See* Davis v. United States, 8 Cir., 1962, 306 F.2d 317, cert. denied, 372 U.S. 920, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963); Guilbeau v. United States, 5 Cir., 1923, 288 F. 731, 732–733. The Pittmans were not charged with conspiracy, *cf.* Robinson v. United States, 10 Cir., 1966, 366 F.2d 575, and did not defend on grounds of entrapment, *cf.* United States v. Cooper, 6 Cir., 1963, 321 F. 2d 456, or mistake, *cf.* Morris v. United States, 5 Cir., 1941, 123 F.2d 957. We are not persuaded that the defendants' knowledge and intent with respect to the alleged transactions were material issues in this trial.

Nonetheless, we hold the evidence to have been properly admitted. Harris's testimony with respect to the August 26 transaction showed that during the time

period spanned by the indictment the Pittmans maintained narcotic drugs on the premises and trusted Harris sufficiently that they would sell them to him. This testimony, if credited, corroborated in detail the testimony of the Federal Agents as to the transactions charged in the indictment. We have held before that evidence of an extraneous offense is admissible when it corroborates the offense charged, otherwise than by simply imputing to the defendant a general disposition to commit offenses of that type. Rodriguez v. United States, 5 Cir., 1960, 284 F.2d 863, 867, cert. denied, 368 U.S. 1001, 82 S.Ct. 632, 7 L.Ed.2d 540 (1962). The evidence with respect to the alleged August 26 transaction, with the requisite limiting instruction, was properly admitted on that ground.

■ The appellants further complain of prejudice from the admission of evidence under Count III of the indictment. Counts III and IV both concerned the alleged August 27 transaction, a sale of cocaine to Harris and Agent Parrish by Mrs. Pittman alone. In connection with Count III (possession), the judge charged the jury on the presumption set forth in 26 U.S.C. § 4704(a).[3] The jury convicted on both counts. Subsequent to the trial, the judge vacated the judgment on Count III on the authority of Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), in which the Supreme Court declared the Section 4704(a) presumption unconstitutional with respect to cocaine. The appellants contend that, since the Turner decision came down before the trial began, the judge erred in not suppressing all evidence pertaining to Count III. They fail, however, to point to a single item of evidence pertaining to Count III which was not also relevant and admissible with respect to Count IV (sale), in which the presumption struck down in Turner was not involved. We discern no error.

■ The appellants further contend that the evidence introduced under Count V should have been excluded, on the ground that it was obtained in the course of a night-time search of their residence pursuant to a defective search warrant. We conclude, to the contrary, that the warrant was properly issued and executed. The allegations in the supporting affidavits, which sustained the Commissioner's finding of probable cause, also sufficed by virtue of 18 U.S.C. § 1405[4] to authorize a night-time search. There was a discrepancy between the supporting affidavits, which specified the Pittmans' correct address (2373 Jones Road), and the warrant as initially issued, which designated 2372 Jones Road as the place to be searched. We are satisfied that the Commissioner, apprised of the discrepancy by a Federal Agent before execution of the warrant, was justified in ordering the correction. Fed.R.Crim.P. Rule 41(c).

■ Finally, the Pittmans object to two sentences in the charge to the jury, set out in the margin.[5] Similar admonitions respecting the testimony of defendants who take the stand have received the approval of the federal courts so often as to render the objection in this case frivolous. See Nelson v. United States, 5 Cir., 1969, 415 F.2d 483, 487, cert. denied, 396 U.S. 1060, 90 S.Ct. 751, 24 L.Ed.2d 754 (1970), and cases cited therein.

Affirmed.

3. See note 1, *supra.*

4. 18 U.S.C. § 1405 provides in part that in any case involving a violation of 26 U.S.C. §§ 4704(a) or 4705(a), "a search warrant may be served at any time of the day or night if the judge or the United States magistrate issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist. * * *" On the relationship of this provision to Fed.R.Crim.P. Rule 41(c), see United States v. Tucker, S.D.N.Y., 1966, 262 F.Supp. 305, 308-309.

5. "Now, that necessarily involves a consideration of the interest such a defendant has in the outcome of the case. You will consider the importance to him or to her of the outcome of the trial and his or her motives for testifying as she or he did."